BROWNFIELD, RESPONDENT, *v.* BIER, ET AL., APPELLANTS.

[Submitted February 12, 1895.  Decided February 25, 1895.]

MINES AND MINING—*Exemption of lode or vein from placer grant.*—A lode or vein exempted from a placer grant, within the meaning of section 2333 of the Revised Statutes of the United States, if it was known to exist at the time of the application for a placer patent, must at least be of such extent and value as to justify exploration, in expectation of finding ore sufficiently valuable to work. To meet the designation of "known" veins or lodes they must be clearly ascertained, and be of such extent as to render the land more valuable on that account, and justify their exploitation. (*Shreve* v. *Copper Bell Min. Co.*, 11 Mont. 309, cited; *Weibold* v. *Davis*, 7 Mont. 107, distinguished.)

SAME—*Ejectment—Finding upon conflict of testimony.*—In ejectment by a placer-mine claimant against a quartz-lode claimant the defendant introduced evidence tending to show that when the application was made for the placer patent the lode claim was known to exist; that the patentees, in running a ditch across the ground, cut through the surface to some depth, and that the flow of water exposed the vein to view; that they had located and named the vein, and subsequently sold it, and that it had been worked by the purchaser, who took out some ore therefrom, and this was long before the placer application. There was testimony of several witnesses for the plaintiff, that prior to the application for the placer patent they had been over the ground many times, where the vein was alleged to exist, and that they did not know of any vein on that ground which would justify working as a quartz mine. And one of the applicants for the placer patent, who was also one of the locators of the lode mining claim, testified that they did no work on the latter claim for the reason it was considered worthless, and the location was abandoned. He further testified that there was no indication of a quartz lead on the ground, more than was brought to view by the ditch, and this was not sufficient to justify development and exploitation as a quartz claim. *Held,* That a finding, upon the conflict of testimony as above set forth, that there was not, at the

time of the application for the placer patent, such a vein known to exist as would exempt it from a placer grant, would not be disturbed.

SAME—*Competency of evidence.*—Testimony that at the time of the application for a placer patent the ground was more valuable as a placer mine than as a quartz-lode mine, is competent, as tending in some degree to prove that the lode or vein was not such a one as to exempt it from the placer grant.

SAME—*Location notice—Validity of.*—A location notice of a mining claim, not verified as required by law, is defective and invalid. (*O'Donnell* v. *Glenn*, 8 Mont. 248; 9 Mont. 452; *Metcalf* v. *Prescott*, 10 Mont. 283, cited.)

EVIDENCE—*Conflict in—New trial.*—Where there is a substantial conflict in the evidence, and that conflict has been resolved by the court below, and a motion for a new trial denied, this court will not disturb the result.

SAME—*Exclusion of—Nonprejudicial error.*—The exclusion of evidence can operate no injury to the party offering it, where other testimony is freely admitted competent to establish all that was sought to be proved by the evidence excluded.

*Appeal from Second Judicial District, Silver Bow County.*

EJECTMENT.    Judgment was rendered for the plaintiff by McHATTON, J.    Affirmed.

Statement of the case by the justice delivering the opinion:

This is an action in the nature of ejectment.    The complaint alleges the plaintiff's seizure in fee and right of possession to lots 5 and 6, block 6, in the Noyes and Upton addition to the city of Butte.    It alleges ouster by the defendants, and damages, and demands possession and damages.    The defendant Bier is the tenant of the defendant Hennessy.    The controversy is between a placer mine claimant and a quartz lode claimant, the plaintiff being the former, and the defendants the latter.    The plaintiff's title is by mesne conveyance from John Noyes, David N. Upton, and David Mieklejohn, who obtained from the United States a placer patent for the land in controversy on May 16, 1881, which patent was issued pursuant to an application made April 9, 1880.

Defendant Hennessy located the ground as the Augusta quartz lode mining claim on February 13, 1888.    Upon the trial the contention of the defendants was that, when the plaintiff's predecessors made application for their placer patent, the vein of the Augusta lode claim was known to exist, and hence was, by the United States statutes, and by the placer patent itself, excepted from the grant of that patent.    This contention was controverted by the plaintiff.    Evidence was intro-

duced by the defendants tending to show that the alleged vein, which they claim, was known to exist at the time of the placer application.   On the other hand, plaintiff introduced testimony tending to show that the said alleged vein was not known to exist at the time of the application for the placer patent.   The case was tried to the court without a jury.   The contention above described was the main controversy in the case, and upon that issue the court, by its judgment in favor of plaintiff, found against the defendants.   The defendants moved for a new trial, which motion was denied, and they now appeal from that order and from the judgment.   The principal assignment of error on the motion for new trial was that the evidence did not sustain the finding of the court that the alleged vein was not known to exist at the time of the application for the placer patent.   There are some other alleged errors, which are also discussed in the opinion below.

*Shropshire & Burleigh*, for Appellants.

The location notice of the Bettina claim was admissible in evidence to show the existence of a lode or vein, and the court erred in excluding it. (*Mantle* v. *Noyes*, 5 Mont. 274.)   If the vein was known generally to exist before the application for the placer patent, it was sufficient. (*Reynolds* v. *Iron etc. Co.*, 116 U. S. 687.)   And the placer patentees knowing that this vein existed prior to the date of their application, and not including the same in their application, they are deemed to have declared that they had no right to it. (*Noyes* v. *Mantle*, 127 U. S. 348.)

*John W. Cotter*, for Respondent.

The defendant had not located the lode claim in accordance with law and, therefore the location was invalid.   (U. S. Rev. Stats., § 2324; *O'Donnell* v. *Glenn*, 8 Mont. 248; *North Noonday Co.* v. *Orient Co.*, 9 Morr. M. Rep. 529, 541.)   The location notice was not verified as required by law (Comp. Stats., § 1477; *McBurney* v. *Berry*, 5 Mont. 300); and was not admissible for the purpose of showing the existence of a lode or vein, and the court did not err in rejecting it.   It does not fall within the principle laid down in *Mantle* v. *Noyes, supra*.

It is not enough that there were surface indications of a lode or vein, but the land must have been more valuable on that account. (*United States* v. *Iron Silver Min. Co.*, 128 U. S. 673; *Iron Silver Co.* v. *Mining Co.*, 143 U. S. 428; *Davis* v. *Wiebold*, 139 U. S. 507.) The weight of the evidence negatives the existence of a known lode prior to the application for a placer patent; at least, there is a substantial conflict, and the findings of the lower court should not be disturbed. (Hayne on New Trial and Appeal, § 97; *Lincoln* v. *Rodgers*, 1 Mont. 217; *Beck* v. *Beck*, 6 Mont. 285; *Chauvin* v. *Valiton*, 7 Mont. 584; *Landsman* v. *Thompson*, 9 Mont. 182, 189; *Kilby* v. *Baker*, 9 Mont. 398.) If the ore taken from the so-called Bettina by Anderson and others was valuable it is improbable that the owners of it would have allowed it to lay upon the dump for a period of about three years without working or reducing it. The inherent improbability of a statement may deny to it all claims to belief. (Hayne on New Trial and Appeal, § 288; *Mattock* v. *Goughnor*, 11 Mont. 273; *Landsman* v. *Thompson*, *supra*.)

De Witt, J.—It is quite true that there was some apparently rather substantial testimony, introduced on the part of the defendants, tending to show that, when the application was made for the placer patent, the vein of the Augusta lode claim was known to exist. They introduced evidence showing that on the 16th of April, 1875, John Noyes and David Upton, who were two of the placer applicants, had located the alleged vein as the Eldorado quartz lode mining claim. They also showed that the said locators of the Eldorado claim sold the same to one Adam Farrady, the consideration named in the deed being five hundred dollars. This was long before the placer application. It was also shown that said Farrady worked said claim as a quartz mine, and took out some ore therefrom. It also appeared in evidence that Fred Anderson and others, between 1878 and 1880, did some quartz mining upon the same ground, and took out ore therefrom, which was worked. As to the value of the ore which these people took out the testimony is not quite clear. It was also attempted to be shown that the Anderson people relocated this same ground

on February 23, 1878, as the Bettina lode claim. The location notice of the Bettina claim was by the court excluded from the testimony, because there was no proper verification to the notice; but, notwithstanding this exclusion of that testimony, still the defendants were allowed to show that Anderson and his partners did mining work upon the ground, and took out ore therefrom. It was also shown that the placer miners, Noyes and Upton, in running a ditch across their ground, cut through the surface to some depth, and that the flow of water exposed the vein to view. There was some other testimony in the case tending to show that the vein was known to exist prior to the application for the placer patent, but we will not go farther into the recital of that testimony, for we are of opinion, as we shall hereinafter express, that the testimony of plaintiff created a substantial conflict as to whether or not the vein was known to exist at the time when the placer application was made, and, when we use the word "vein," we mean, not simply a streak of quartz which was apparent, but, on the contrary, we mean to indicate a quartz vein in its legal sense, such a one as known to exist at the time of the placer patent, can be held to be excluded from such patent.

Recurring first to the testimony of Adam Farrady, the grantee of Noyes and Upton in the Eldorado claim, he testified that he did some work upon the claim, and took out some ore, but that he gave it up and abandoned it because it did not pay him to work it, and there appeared to be nothing in it to warrant him in incurring any further expenditures on his part in developing the said claim as a quartz lode mine.

There was testimony of several other witnesses that prior to the application for the placer patent they had been over the ground many times where the vein was alleged to exist, and that they did not know of any vein on 'that ground which would justify working as a quartz mine.

The important testimony, however, on behalf of plaintiff, was that of David N. Upton. He was one of the applicants for the placer patent, and he was also one of the locators of the Eldorado quartz lode mining claim. Mr. Upton said: "We never did any work on the claim [meaning the Eldorado quartz

claim.] The reason that we did n't was that we did n't consider it worth any thing as a quartz proposition; we never did any thing with the claim, just abandoned the location; I don't know whether we sold it to Farrady; I don't recollect making a deed for it; there may be a deed, but I don't recollect it." Mr. Upton says elsewhere in his testimony that Farrady did not pay him five hundred dollars for the Eldorado claim; he could not, however, successfully deny making the deed to Farrady, because the same was introduced and offered in evidence.

Witness Upton, although he could not successfully deny the making of the deed, contended throughout his whole examination that the "quartz proposition," as he calls it, was not worth any thing, and for that reason he and his partners gave it up. He says further: " There was no quartz lead known to exist in this placer claim prior to our application in 1880, that I know of, except this one that we located." This witness testified that the ground was more valuable for placer than it was for quartz. As to the work which Anderson and his partners did on the claim, the witness Upton testified that he was living right by the ground for many years; he says: "Anderson and that outfit did not take out a pound of ore, to my knowledge, during 1878 and 1879; I was working right in that vicinity, on the same lot where I am now, since 1866. I passed back and forth on this ground every day while we were working the placers. As to the Eldorado claim, the reason we did not represent it was that we considered it valueless for a quartz claim. We never did any work on it to my knowledge."

There were the ˋfollowing questions and answers between this witness and the court:

"Q. Let me ask you one question, Mr. Upton. At the time you made this location of the so-called Eldorado, and up till 1888, was this vein, or supposed vein, upon which you made the location, at any time, in your judgment as a miner, of sufficient value to justify exploitation or development? A. No, sir; it was not.

"Q. I understand you to say that was a reason why you did not hold it? A. Yes, sir; there was no indication of a

quartz lead on the ground that I know of, any thing more than this place in the ditch.

" Q. You thought that what you found there was not sufficient to justify development and exploitation as a quartz claim? A. Yes, sir."

It does not appear to be necessary to quote the evidence further. Between the defendants' and the plaintiff's testimony there was a conflict, as above detailed, upon which conflict the court found in favor of the plaintiff. The question of law, however, is whether the testimony of plaintiff did in fact raise a substantial conflict, that is to say, whether the evidence of plaintiff was, not simply that a vein did not exist, but whether plaintiff showed that there did not exist a vein of quartz in legal contemplation, that is, such a vein as would be excluded from the placer patent.

The question of "a vein known to exist at the time of an application for a patent" for the ground, under placer and townsite laws, has engaged the attention of the United States supreme court many times within the last few years, and in one case resulted in an earnest dissension in that distinguished tribunal. (*Iron Silver Co.* v. *Mike etc. Co.*, 143 U. S. 394.) But in that case the contention within the court seems to us to have been more upon the question of facts in that particular case, than upon a view of the law. We therefore feel that, as to the law, we may, with propriety, quote from both the prevailing and dissenting opinions in the case. As to what a vein is, we undertook, in the case of *Shreve* v. *Copper Bell Min. Co.*, 11 Mont. 309, to state what we believed was the opinion of the United States supreme court upon that subject. We said, quoting from the syllabus of that case, which states the conclusion correctly, as follows: "It is not essential to the validity of the location of a mining claim that the discoverer should have found, prior to his location thereof, that the lode contained mineral deposits of sufficient value to justify work to extract them; but the spirit of the statutes is satisfied by the discovery of mineral deposits of such value as to at least justify the exploration of the lode in expectation of finding ore sufficiently valuable to work. (*Davis* v. *Wiebold*, 7 Mont. 107, reviewed and distinguished.)"

This view, we believe, was in accord with the decisions of the United States supreme court rendered prior to our decision in the Copper Bell case (December 14, 1891), and also with the utterances of that court since that date.

We quote as follows from the case of *United States* v. *Iron Silver Min. Co.*, 128 U. S. 683: "It appears very clearly from the evidence that no lodes or veins were discovered by the excavations of Sawyer in his prospecting work, and that his lode locations were made upon an erroneous opinion, and not upon knowledge, that lodes bearing metal were disclosed by them. It is not enough that there may have been some indications, by outcroppings on the surface, of the existence of lodes or veins of rock in place bearing gold or silver or other metal, to justify their designation as 'known' veins or lodes. To meet that designation the veins or lodes must be clearly ascertained, and be of such extent as to render the land more valuable on that account, and justify their exploitation. Although pits and shafts had been sunk in various places, and, what are termed in mining, crosscuts had been run, only loose gold and small nuggets had been found, mingled with earth, sand, and gravel. Lodes and veins of quartz or other rock in place bearing gold or silver or other metal were not disclosed when the application for the patents was made. The subsequent discovery of lodes upon the ground, and their successful working, does not affect the good faith of the application. That must be determined by what was known to exist at the time. It is not, therefore, a fault to be charged upon Sawyer that he abandoned his original lode locations after he had discovered that they were worthless, in order to make locations of placer claims."

In *Iron Silver Min. Co.* v. *Campbell*, 135 U. S. 287, the court, speaking of a placer patent, said: "There is excepted from that grant any lode existing and known at the time application was made for his patent. Whether such a lode did exist, and whether it was known to him, is a question which he has a right to have tried by a court of justice, and from which he cannot be excluded by the subsequent action of the officers of the land department. . . . . But, in the present case, two facts requiring judgment, discretion, knowledge of the law,

and the balancing of testimony, are essential to the exercise of the right to grant the property to some other party. One of these, the existence of such a vein, is a question often of great conflict of evidence, requiring the weighing of testimony. The other, the most important of all, the most difficult to decide, the least likely to be decided correctly by *ex parte* testimony or in *ex parte* proceedings, is the question whether, if such mine existed, it was known to the party who applied for the patent at the time application was made. And while we are not yet prepared to say at this time that the land officers cannot, on a *prima facie* case, decide the right of the applicant to such vein and give him a patent for it, we are satisfied that in any conflict between the title conferred by two patents, whether it be in law or in equity, the holder of the title under the elder patent has a right to require that the existence of the lode, and the knowledge of its existence on the part of the grantee of the elder patent, should be established."

As to the case of *Davis* v. *Weibold*, 139 U. S. 507, we very fully expressed our views in *Shreve* v. *Copper Bell Min. Co.*, 11 Mont. 309, cited, and need not now reiterate them.

The *Iron Silver Co.* v. *Mike etc. Co.*, 143 U. S. 394, came into the United States supreme court later (February 29, 1892), and, for the reason which we have suggested above, we feel at liberty to quote from both opinions in that case. We extract the following from the majority opinion: "The second matter is this: Was there a known vein at the time of the application for a patent, within the meaning of section 2333? It was not then a located vein or lode, and the case was evidently tried by the plaintiff upon the theory that unless it was a located vein it was not a known vein, but that, as we have seen, is not a correct interpretation of the statute. It is enough that it be known, and in this respect, to come within the intent of the statute, it must either have been known to the applicant for the placer patent, or known to the community generally, or else disclosed by workings and obvious to any one making a reasonable and fair inspection of the premises for the purpose of obtaining title from the government. . . . . Another question is, whether this was such a vein-bearing gold, silver, cinnabar, lead, or other valuable deposit as that a discoverer could

obtain title thereto under sections 2320 and 2325. It is undoubtedly true, that not every crevice in the rocks, nor every outcropping on the surface, which suggests the possibility of mineral, or which may, on subsequent exploration, be found to develop ore of great value, can be adjudged a known vein or lode within the meaning of the statute. As said by this court in the case of *United States* v. *Iron Silver Min. Co.*, 128 U. S. 673, 683: 'It is not enough that there may have been some indications, by outcroppings on the surface, of the existence of lodes or veins of rock in place bearing gold, or silver, or other metal, to justify their designation as "known" veins or lodes. To meet that designation, the veins or lodes must be clearly ascertained, and be of such extent as to render the land more valuable on that account, and justify their exploitation. And yet, in the case of *Iron Silver Min. Co.* v. *Cheesman*, 116 U. S. 529, 536, this court sustained an instruction as to what constitutes a lode or vein, given in these words: 'To determine whether a lode or vein exists it is necessary to define those terms; and, as to that, it is enough to say that a lode or vein is a body of mineral or mineral-bearing rock, within defined boundaries in the general mass of the mountain. In this definition the elements are the body of mineral or mineral-bearing rock and the boundaries; with either of these things well established, very slight evidence may be accepted as to the existence of the other. A body of mineral or mineral-bearing rock in the general mass of the mountain, so far as it may continue unbroken and without interruption, may be regarded as a lode, whatever the boundaries may be. In the existence of such a body, and to the extent of it, boundaries are implied. On the other hand, with well-defined boundaries, very slight evidence of ore within such boundaries will prove the existence of a lode. Such boundaries constitute a fissure, and, if in such fissure ore is found, although at considerable intervals and in small quantities, it is called a lode or vein.' It is, after all, a question of fact for a jury. It cannot be said, as a matter of law in advance, how much of gold or silver must be found in a vein before it will justify exploitation and be properly called a ' known ' vein."

We take the following language from the dissenting opinion:

"But, as I shall show hereafter, the mere indication or presence of gold or silver is not sufficient to establish the existence of a lode. The mineral must exist in such quantities as to justify expenditure of money for the development of the mine and extraction of the mineral. It would create surprise among miners to be told that if a trace of loose gold, such as is shown here, was found at any one spot in a tunnel leading to a placer claim, it would establish the existence of a vein or lode in the placer claim, and form the basis of a proceeding to despoil a purchaser from the patentee, years after the purchase, of a large portion of its mining property. . . . . The presumption in favor of its validity attends the placer patent, as it does all patents of the government of any interest in the public lands which they purport to convey. So potential and efficacious is such presumption that it has been frequently held by this court, that if, under any circumstances in the case, the patent might have been rightfully issued, it will be presumed, as against any collateral attack, that such circumstances existed. (*Smelting Min. Co.* v. *Kemp,* 104 U. S. 636, 646.) As was said by the circuit court in the Eureka case, a patent for a mining claim is ironclad in its potency against all mere speculative inferences. (4 Saw. 302.) The burden of proof therefore rested upon the defendant to show affirmatively that it was entitled, as against that patent, to the possession of the lode claim, on the ground that the lode was excepted from the patent in express terms. . . . . To bring, therefore, a vein or lode of quartz or other rock in place bearing precious metals within the exceptions of the statute, and of course within those of the patent to the extent to which they are operative, the vein or lode, according to the decisions referred to, *must have been known to exist at the time application was made for the patent.* The applicant could not, of course, speak of discoveries not then made; necessarily, his knowledge must have been limited to the time of his application. . . . . As stated above there can be no location of a lode or vein until the discovery of precious metals in it has been had. And then it is not every vein or lode which may show traces of gold or silver that is exempted from sale or patent of the ground embracing it, but those only which possess these metals in such quantity as

to enhance the value of the land, and invite the expenditure of time and money for their development. No purpose or policy would be subserved by excepting from sale and patent veins and lodes yielding no remunerative return for labor expended upon them. Such exceptions would only be productive of embarrassment to the patentee, without any benefit to others. In a suit brought by the United States to cancel certain placer claims against the plaintiff in this case, alleging, among other things, that the patents were obtained by false and fraudulent representations, that the land contained no known veins or lodes of quartz or other rock in place bearing gold, or silver, or other metals, the court, speaking of the evidence in the case as insufficient to sustain the allegation, said: 'It is not enough that there may have been some indications, by outcroppings on the surface, of the existence of lodes or veins of rock in place bearing gold, or silver, or other metal to justify their designation as 'known' veins or lodes. To meet that designation the lodes or veins must be clearly ascertained, and be of such extent as to render the land more valuable on that account and justify their exploitation.' (*United States* v. *Iron Silver Min. Co.*, 128 U. S. 673, 683. See, to the same purport, *Deffenback* v. *Hawke*, 115 U. S. 392, 404, and *Colorado Coal Co.* v. *United States*, 123 U. S. 307, 328.) . . . . To sustain the admission of such beliefs or opinions in evidence against the patent would be to take from that instrument of the government all the peace and security which it is supposed to give its possessor in the enjoyment of the property it transfers to him. An unlocated lode claim, existing only in the impressions and beliefs of neighbors or others, and not in knowledge founded upon discovery and exploration, does not seem to me to have any element of property or validity as a basis of a defense to proceedings to obtain a patent from the government."

The case of *Dower* v. *Richards*, 151 U. S. 658, was a controversy between a townsite patent and a placer patent. In that case the court said: "There can be no doubt that the decision of the supreme court of the state in this respect was correct. It is established by former decisions of this court, that, under the acts of Congress which govern this case in order to except mines or mineral lands from the

operation of a townsite patent, it is not sufficient that the lands do in fact contain minerals, or even valuable minerals, when the townsite patent takes effect; but they must at that time be known to contain minerals of such extent and value as to justify expenditures for the purpose of extracting them; and if the lands are not known at that time to be so valuable for mining purposes, the fact that they have once been valuable or are afterwards discovered to be still valuable, for such purposes does not defeat or impair the title of persons claiming under the townsite patent. (*Deffenback* v. *Hawke, supra; Davis* v. *Weibold, supra.*)

We call attention to the facts in that case to exemplify how far the United States supreme court has gone in requiring strict and satisfactory proof that the vein was known to exist at the time that its competing patent was issued.

Applying these principles to the facts in the case at bar, we find positive testimony on the part of plaintiff that the vein which the defendant Hennessy located in 1888, although conceded to be known as a vein prior to the placer application, was not, prior to that application, known to be such a vein as the decisions hold to be exempt from the placer grant. There was positive testimony before the district court that the vein of the Augusta lode mining claim, at the time of the application for the placer patent, was not one which was known to contain minerals of such extent and value as to justify expenditures for the purpose of extracting them. (See the doctrine as stated by us in *Shreve* v. *Copper Bell Min. Co., supra,* and affirmed in *Dower* v. *Richards, supra.*)

We are, therefore, of opinion that the district court must be sustained in its holding that there was not, at the time of the application for the placer patent, such a vein known to exist as would exempt the same from a placer grant.

Of course it is apparent that the views which we have herein expressed are not out of accord with the decision of the United States supreme court in *Barden* v. *Northern Pac. R. R. Co.,* 154 U. S. 288, for in that case the exemption of mineral lands was of such lands, whether known or unknown.

There was a substantial conflict of testimony, as we have shown, as to whether the Augusta vein was legally known to

exist at the time of the application for the placer patent. When there is a substantial conflict in the evidence, and that conflict has been resolved by the district court, and the district court has denied a motion for a new trial, this court will not disturb the result. This doctrine has been so persistently announced by this court for twenty-six years that it may be considered as the settled rule in this jurisdiction.

Another error assigned by the appellants is that the district court allowed plaintiff to introduce testimony that at the time of the placer application the ground was more valuable as a placer mine than as a quartz lode mine. We are of opinion that such testimony was not in the nature of conclusive evidence, but that it was competent as tending in some degree, slight perhaps, to prove that the vein was not such a one as to exempt it from the placer grant. (See the cases heretofore cited in this opinion.)

Another error assigned by the appellants is the exclusion by the court of the location notice of the Bettina lode claim. This was a location attempted to be made by Anderson and others, on February 23, 1878, upon the vein which defendant Hennessy afterwards located as the Augusta. It is conceded that the location notice of the Bettina was defective in that it was not verified. (*O'Donnell* v. *Glenn*, 8 Mont. 248; 9 Mont. 452; *Metcalf* v. *Prescott*, 10 Mont. 283.) But appellants claim that the location notice was competent testimony as tending to prove that a vein was known to exist. Whether it was competent or not does not seem to be material at this time, for the reason that defendants were allowed to prove by the testimony of the attempted locators their knowledge of the existence of the vein. They testified very fully in this respect, and they were permitted to say all that they could have said if their invalid location notice had been permitted to be introduced in testimony. Therefore, the defendants could have suffered no injury in this respect.

We are of opinion that none of the errors assigned can be sustained, and the judgment is therefore affirmed.

*Affirmed.*

HUNT, J., concurs.