BUTTE & BOSTON MINING COMPANY, RESPONDENT, v.
SLOAN, ADMINISTRATRIX, APPELLANT.

[Submitted April 17, 1895.  Decided April 29, 1895.]

MINES AND MINING—*Ejectment—Lode Claim on placer ground—Conflict in evidence.*—
Where, in ejectment to recover mining property, there was clear and substantial evidence to support the findings of the jury that there were no veins or lodes known to exist within the boundaries of plaintiff's placer claim at the time of applications for patents therefor, such findings will not be disturbed because of a conflict in the evidence.

SAME—*New trial—Newly discovered evidence.*—Where the jury found that no veins or lodes were known to exist upon patented placer ground at the time of application for patent therefor, the discovery, subsequent to the trial, that a lode claim had been located upon the ground in controversy long prior to the applications for patent, and notice thereof recorded, would not justify a new trial upon the ground of newly discovered evidence, since the mere recorded evidence of a claim of discovery could not overcome the finding that no veins or lodes were known to exist.

SAME—*Ejectment—Placer patent—Evidence.*—In ejectment, where plaintiffs claimed under placer patents, the introduction of the patents in evidence conclusively establishes, as against the defendants, the fact that the ground was placer.

*Appeal from Second Judicial District, Silver Bow County.*

EJECTMENT to recover mining ground.   Defendant's motion
for a new trial was denied by McHATTON; J.    Affirmed.

Statement of the case by the justice delivering the opinion.

Ejectment for mining ground.    Plaintiff claimed the property involved under placer patents.   Defendants claimed certain portions of the ground under and by virtue of a quartz location made upon veins which defendants claim were known to exist at the date of the application for the placer patents. The plaintiff denied the existence of any veins, known or unknown, upon the ground.   There was a trial to a jury.   A general verdict for the plaintiff was rendered, and special issues were returned.   By these issues the jury determined that no veins were discovered, or exposed to view, within the boundaries of the mining ground in dispute; that in 1876 there was no discovery in the shaft known as "Discovery Shaft of the Brown Girl Lode Claim;" that, when J. & T. made application for their placer patent, there were no veins or lodes within

the boundaries of the property described in the patent, so exposed that a person seeking information as to whether a vein or lode existed could have seen them, and that neither J. nor T. knew of any lode or vein within the Brown Girl location; that the Brown Girl location, as located by one John Devlin prior to the application of J. & T. for a placer patent, was not so marked in its boundaries upon the ground as to be readily traced; that, at the date of the application for placer patent, no veins claimed by the defendants were known to exist; that J. & T., placer patent applicants, were well acquainted with the ground included in the placer patent, but that none of the veins now claimed by defendants were known to said J. & T. at the time of their application; and that at the date of the application for patents there were no known leads, lodes, or veins upon the ground involved in this suit.

The court entered judgment in favor of the plaintiff. A motion for a new trial was made and overruled. Defendants appeal.

*Charles O'Donnell,* for Appellant.

Counsel cited: *Morton* v. *Nebraska,* 89 U. S. 639, 675; *Gwillian* v. *Donnellan,* 112 U. S. 1110; *Reynolds* v. *Iron Silver Mining Co.,* 115 U. S., page 601; *Iron Silver Mining Co.* v. *Reynolds,* 123 U. S. 598; *Noyes* v. *Mantle,* 123 U. S. 1132; *United States* v. *Silver Mining Co.,* 128 U. S. 195; *Hammer* v. *Garfield Mining Co.,* 128 U. S. 548; *Dahl* v. *Ranheim,* 132 U. S. 260; *Iron Silver Mining Co.* v. *Campbell,* 10 Sup. Ct. 765; *United States* v. *Trinidad Coal and Coke Co.,* 11 Sup. Ct. 57, 137 U. S. 160; *Davis* v. *Wiebold,* 11 Sup. Court 628; *Iron Silver Mining Co.* v. *Mike & Starr Gold & Silver Mining Co.,* 12 Sup. Ct. Rep. 543; *Sullivan* v. *Iron Silver Mining Co.,* 12 Sup. Ct. Rep. 555.

*Forbis & Forbis,* for Respondent.

HUNT, J.—The record of the evidence in this case is vo-

luminous, consisting, not alone of the elaborate opinions of many practical miners, of great intelligence and experience, concerning the material issue, but likewise of experts skilled in the technique of the enlightened and comprehensive science of mining engineering.

It plainly appears that the case was exhaustively presented by both sides, and, like many other suits of its important class, we find the transcript embodies numerous and most substantial differences of opinion upon the vital point involved,—whether there were ever any veins, leads or lodes legally existing, and known to exist, within the ground embraced in the placer patent, prior to and at the time applications were made for such patents by Talbot & Jones, original patentees.

It is unnecessary to set forth at length the exact character of the testimony. Briefly stated, witnesses for the defendants swore that there were leads known to exist long prior to the applications for placer patents; that these leads were first seen about 1866 or 1867, and were visible in a water ditch which ran across what was subsequently relocated as the "Brown Girl Claim" in 1884; that the granite was up to the grass roots; that the lead cropped out, and float rock could be traced in an easterly direction from the ditch and from the discovery shaft; that the Brown Girl lode had a wall on the north side. Brown, called by defendants, said he put up a location notice in 1878, but did not record the same, and did not recall the name given to the claim; did not sink a shaft at that time; and did nothing, in fact, then, except to sink fifteen or eighteen inches. In 1884 he located the Brown Girl. Devlin, for defendants, said he had made a discovery of a quartz lode on the ground in 1876, before the Brown Girl discovery, but never recorded it. It was the Cressida. He sunk a hole about three feet deep, and found a wall. On one side were granite and quartz. The discovery shaft was about thirty feet westerly from the Brown Girl, although the location included much of the Brown Girl ground. It was the same lead. That the country about his location was a slide, but there was no slide ground on his particular location.

The plaintiff's witnesses, in rebuttal, said: That the ground involved in suit was a slide, drift, with nothing in place in the ditches referred to by defendants' witnesses. That the rock was not in place in the discovery shaft of the Brown Girl, down to a depth of ten feet. That there is no vein upon the ground, showing in the ditches or excavations. That there were discolorations of the surface material, or slide rock, due to iron. These discolorations cropped out generally, but no croppings of a ledge. The ground was loose, showing oxidized granite, carrying more or less quartz passing through loose material. That the whole hill about the ground in dispute bears evidence of impregnation of iron. That there was no wall in the Brown Girl shaft. That there was no vein in the ditch, but a granite material, stained with red and yellow iron. James Larkin, for plaintiff, said he was working on the Snohomish claim in 1882, when Brown was working on the Brown Girl. At that time the Brown Girl shaft was about four and one-half feet deep. There was nothing like a vein anywhere in that hole then. That the country about there was all decomposed slide rock, and witness sunk on his own claim thirty-five feet before he claimed a discovery and reached solid formation. Another witness, McNamara, corroborated Larkin in his evidence concerning the loose formation of the ground in the vicinity of the Brown Girl location; and in 1881 he looked over the particular ground in controversy, in search of a vein, but could see no vein. Brown's shaft was four or five feet deep about that time.

To these conflicting facts were applied a series of instructions, embracing definitions of lode claims, as approved by the supreme court of the United States and the supreme court of this state, to the effect that, to constitute "veins known to exist," within the meaning of the law, it is not enough that there may have been some indications, by outcroppings on the surface, of the existence of lodes, or veins of rock in place, bearing gold or silver, or other metals. To meet the designation of "veins known to exist," the lodes or veins must be clearly

·ascertained, and be of such extent as to render the land more valuable on that account, and justify their exploitation. (*United States* v. *Iron Silver Mining Co.*, 128 U. S. 673, 9 Sup. Ct. 195; *Brownfield* v. *Bier*, 15 Mont. 403, 39 Pac. 461; *Iron Silver Mining Co.* v. *Mike & Starr Gold & Silver Mining Co.*, 143 U. S. 394, 12 Sup. Ct. 543.)

Were there any veins or lodes, and were they veins or lodes known to exist, at the time application was made for the patent? And was this plaintiff, as a purchaser from the patentees, to be deprived of any portion of its claim by legal exception of any vein or lode from the placer patent grant? These were all questions based on facts generally and specially to be answered by the jury, after analyzing the evidence adduced, under proper instructions; and, with unvarying consistency, they found that there were no veins or lodes known to exist at the time of the applications for the placer patents to the ground in question. The evidence to support these findings is clear and substantial. We cannot say the jury erred.

The present case is to be distinguished from *Brownfield* v. *Bier*, *supra*, referred to in argument. In the trial of that suit, veins were proved to have existed; and the principal and difficult point for decision was, not whether there were veins at all, but whether the veins were " such veins as the decisions hold to be exempt from the placer grant, or such as were known to contain minerals of such extent and value as to justify expenditures for the purpose of extracting them." It was held they were not. This contention, however, is simplified by the fact, as found, that there were no veins at all, discovered or known to exist, within the placer-claim boundaries, at the dates of the applications for placer patents. It therefore follows that, where there were no quartz veins discovered or known to exist when the placer claimant made his application for patent, defendants failed to show that they were entitled, as against the patents, to the possession of any pretended lode claims, on the ground that such lode claims were excepted from the patent to Jones and Talbot. (*Brownfield* v. *Bier*, *supra*.)

Defendants also moved for a new trial upon the ground of

newly-discovered evidence. After the trial was over, one of
the defendants, Sloan, discovered that on June 13, 1876, John
Devlin had located the Radical claim, upon what was after-
wards the Brown Girl location. This location notice was on
record, but by oversight, perhaps excusable, under all the cir-
cumstances, was not produced at the trial. Appellants now
argue that the evidence of the said certified copy of the Radi-
cal Lode location will prove that a lead, or lode bearing prec-
ious metals, was known to exist on the ground now known as
the "Brown Girl Lode Claim," over three years prior to the
application of Jones and Talbot for the patent to the ground
now known as "Mineral Entry No. 491 and 597." But the
question of whether or not Devlin discovered a vein was liti-
gated, and it was found he had not, and no vein existed in his
discovery shaft. The essence of the suit was this inquiry, and
the fact being found that there were no veins, and that he made
no discovery, no recorded evidence of a claim of discovery
could legally avail him; or, to be plainer, if no lead existed,
no claim of one could overcome the fact of the physical absence
of one.

It would be a dangerous precedent to hold that the introduc-
tion in evidence of a notice of location of a mining claim would
alone justify a reversal of a verdict in a suit where, through-
out a long and expensive trial, the existence of any known vein
had been the issue on trial between placer and quartz locations,
and where it had been decided no veins existed at all in defend-
ants' pretended location at any time prior to the placer claim-
ant's several applications for patent.

The last assignment relied on is that the court erred in sus-
taining the plaintiff's objection to the following question:
"Did you ever know of any placer mining being done on the
ground known as the 'Brown Girl Lode Claim' prior to
1889?" The jury having found that Devlin never had had a
valid location, and that there was no vein in the claim of Dev-
lin, the question is not now a material one for our considera-
tion. We think, however, that the placer patents which were

issued to Jones and Talbot, and offered in evidence, conclusively established, as against defendants, the fact that the ground was placer.   Nor can defendants now avoid the effect of these patents.   (*Dahl* v. *Raunheim*, 132 U. S. 260, 10 Sup. Ct. 74.)

We find no error in the record.   The order denying a motion for a new trial, and the judgment, are affirmed.

*Affirmed.*

PEMBERTON, C. J., and DE WITT, J., concur.