WASHOE COPPER CO., APPELLANT, *v.* JUNILA ET AL., RESPONDENTS.

(No. 2,955.)

(Submitted April 3, 1911. Decided April 17, 1911.)

[115 Pac. 916.]

*Mines and Mining — Quartz Lodes—Placer Claims—Known Veins Within Boundaries of—Declaratory Statements—Insufficiency—Evidence—Patent—Conclusiveness— Declarations —Inadmissibility—Trial—Stipulations—Construction.*

Mines and Mining—Placer Claims—"Known Veins" Within—Public Property.
1. If at the time application for patent to a placer location was made a vein or lode was known to exist within its boundaries but was not claimed or referred to in the patent, such vein or lode remained public property of the United States, mining operations upon which could not be enjoined by the successor in interest of the original placer patentee.

Same—Character of Vein—Evidence.
2. Evidence touching the character and extent of a quartz lode within the boundaries of a patented placer location, as disclosed by development made after application for patent, which lode was claimed by defendants to have been excluded from such patent because of the fact that it was well known at that time but not claimed by the patentee, was properly admitted.

Same—Declaratory Statement—Verification—Evidence.
3. A declaratory statement of a quartz lode location, not verified as required by the law in force at the time it was made, was void; hence the reception of a certified copy thereof in evidence was error.

Same—Constructive Notice—Void Instrument Ineffectual.
4. A void instrument cannot impart constructive knowledge to anyone.

Same—Placer Claims—Known Vein Excluded—Constructive Knowledge.
5. To exclude a lode from a placer patent, because of the failure of the patentee to lay claim thereto at the time of his application for patent, its existence must have then been known, either to him personally or to the community generally, constructive knowledge on his part sufficing.

Same—Declarations—Admissibility in Evidence.
   6.   One who offers in evidence the declaration of a person through whom he traces his title to land must show (a) that it was made while the declarant was holding title; (b) that he was in fact the grantor of the party against whom the declaration is offered; and (c) that the declaration was against interest.

Same—Declarations—Inadmissibility.
   7.   In an action for damages for ores extracted from a vein within the boundaries of plaintiff's patented placer claim, defendants introduced the deposition of the original owner of the ground, for the purpose of proving by statements contained therein that at the time application for placer patent was made, there was a known quartz vein within the boundaries of the claim. *Held*, that, in the absence of proof that the declarant was the owner of the property at the time the declaration was made, or that he was the grantor of plaintiff, the deposition was hearsay and inadmissible against plaintiff.

Same—Declarations—Inadmissibility.
   8.   Under the rule that the declarations of a person while the owner of land may not be introduced in evidence to either sustain or destroy the record title, the deposition referred to in paragraph 7 above was further inadmissible because its direct effect was to destroy title to that portion of the placer crossed by the vein and a strip of land twenty-five feet wide on either side thereof.

Same—Placer Patent—Conclusiveness.
   9.   Evidence that placer mining operations have never been carried on upon the premises included in a placer patent is inadmissible to overcome the effect of the patent; the fact that the ground was and is placer is conclusively established by its issuance.

Same—Trial—Issues—Stipulation—Construction.
   10.   A stipulation admitting that defendants, who by mesne conveyances had become the successors in interest of the locators of certain lode claims, "have acquired whatever right was obtained by the location" of such claims, was not an admission that the location of any one of them was valid or that the locators acquired any rights whatever thereunder, but simply relieved defendants from deraigning their title after proving valid locations of the claims.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

ACTION by the Washoe Copper Company against John Junila and others, in which W. H. Hall and others intervene. From a judgment for defendants and interveners, plaintiff appeals. Reversed and remanded.

*Mr. C. F. Kelley, Mr. L. O. Evans,* and *Mr. D. Gay Stivers* submitted a brief in behalf of Appellant. *Mr. Kelley* and *Mr. Evans* argued the cause orally.

While certain admissions or declarations of a grantor or predecessor in title, while holding the title, are held to be ad-

missible in evidence against the successor in interest, thus vary-
ing the rule as to hearsay evidence, there are certain exceptions
and limitations to this rule, one of the most important being
that while the declarations of a party in possession of land
are held to be admissible against his grantee so far as said
admissions or declarations go to show the nature or character
of such possession, they are not permitted for the purpose of
defeating or denying the title conveyed by the grantor to the
party against whom the declarations or admissions are offered.
In other words, verbal or written declarations of a grantor are
not permitted for the purpose of showing that the grantor had
disclaimed or disputed or disproved the title conveyed by him,
or to impair or destroy the record title. (*Dodge* v. *Freedman's
Saving & Trust Co.*, 93 U. S. 383, 23 L. Ed. 920; *Phillips* v.
*Laughlin*, 99 Me. 26, 105 Am. St. Rep. 253, 58 Atl. 64, 2 Ann.
Cas. 1; *Gibney* v. *Marchay*, 34 N. Y. 303; *Carpenter* v. *Hollister*,
13 Vt. 552, 37 Am. Dec. 612; *Jackson* v. *Cary*, 16 Johns. 302,
6 N. Y. Com. Law Rep. 149.)

To constitute a vein a "known vein," it must be shown,
either that the placer applicants had actual knowledge of its
existence, or that its existence was generally known in the
community, or that from workings or disclosures on the ground,
the existence of the vein must have been obvious to anyone mak-
ing the reasonable inspection required of the placer applicants.
(*Iron Silver M. Co.* v. *Mike & Starr G. & S. M. Co.*, 143 U. S. 394,
12 Sup. Ct. 543, 36 L. Ed. 201, 17 Morr. Min. Rep. 436; *Brown-
field* v. *Bier*, 15 Mont. 403, 39 Pac. 461.)

The vein at the time of application for patent must have
been such as would justify exploitation. This doctrine has
become so thoroughly established and is so uniformly announced,
that citations are not necessary. The following cases among
many show the prevailing principle: *United States* v. *Iron Silver
Min. Co.*, 128 U. S. 673, 9 Sup. Ct. 195, 32 L. Ed. 571; *Iron
Silver Min. Co.* v. *Mike & Starr G. & S. M. Co., supra; Butte
& Boston C. M. Co.* v. *Sloan*, 16 Mont. 97, 40 Pac. 217; *Casey*
v. *Thieviege*, 19 Mont. 341, 61 Am. St. Rep. 511, 48 Pac. 394,

18 Morr. Min. Rep. 624; *Noyes* v. *Clifford,* 37 Mont. 138, 94 Pac. 842; *Montana Central Ry. Co.* v. *Midgeon,* 68 Fed. 811.

The vein must have been clearly ascertained at the time of application for placer patent. A vein cannot be said to be known from mere outcroppings or indications, but must be clearly ascertained. (*United States* v. *Iron Silver Min. Co., supra; Sullivan* v. *Iron Silver Min. Co.,* 143 U. S. 431, 12 Sup. Ct. 555, 36 L. Ed. 214.)

The vein or lode must be of such character and extent as to render the land more valuable on that account, and in this case it was incumbent upon interveners to show that the ground was more valuable on account of the quartz vein than for placer purposes. (*United States* v. *Iron Silver M. Co., Brownfield* v. *Bier, Noyes* v. *Clifford, supra.*)

The issuance of the placer patent determined conclusively that the ground included therein is placer in character. (*Steel* v. *St. Louis Smelting Co.,* 106 U. S. 447, 1 Sup. Ct. 389, 27 L. Ed. 226; *Butte & Boston C. M. Co.* v. *Sloan,* 16 Mont. 103, 40 Pac. 217.)

*Mr. John J. McHatton* submitted a brief in behalf of Respondents.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was brought by the Washoe Copper Company against Junila and others to recover damages for ores extracted from ground claimed by the plaintiff, and for an injunction to restrain further trespasses.

The plaintiff alleges its ownership in and to an irregularly shaped piece of ground in the N. E. ¼ of the S. W. ¼ of section 18, township 3 N., of range 7 W., in Silver Bow county. The defendants answered, admitting that they had mined in a portion of the ground claimed by plaintiff, denied plaintiff's ownership of such portion, alleged that they were merely lessees of others who claim to be the owners, and pleaded affirmatively

that plaintiff's only claim of ownership to the ground described in the complaint is by virtue of mesne conveyances from the original patentees of placer 765; that, when application for patent to such placer was made, there existed within the boundaries of the placer claim a well-known lode or vein; that the applicants for placer patent did not apply for patent to such lode or vein, and the same was excepted from the placer patent; and that all acts done by defendants were done upon such known lode or vein. Thereafter Hall and others filed a complaint in intervention, in which they set forth substantially the same facts as those pleaded affirmatively by the defendants, and other facts to which reference will be made hereafter. They describe particularly the ground claimed by them, and conclude with a prayer for general relief. Issues were joined upon all the affirmative allegations contained in the answer and the complaint in intervention, except that plaintiff admitted that its only claim of ownership is by virtue of mesne conveyances from the original placer patentees. The trial court found in favor of the defendants and interveners, and rendered a decree in favor of interveners, adjudging them to be the owners of the ground claimed by them. From the decree and an order denying it a new trial, the plaintiff has appealed.

1. Error is predicated upon the action of the trial court in overruling plaintiff's demurrer to the affirmative defense pleaded in the answer of defendants. But we think there is not any merit in the contention; for even assuming that sufficient facts are not pleaded to entitle defendants to affirmative relief—and they do not seek any—still the facts, which, if true, show the existence of a known vein within the ground claimed by plaintiff at the time the application for placer patent was made, state a defense to plaintiff's cause of action; for, if such known vein existed, it remained public property of the United States, [1]     and plaintiff will not be heard to object to defendants carrying on mining operations upon it. (*Reynolds* v. *Iron Silver M. Co.*, 116 U. S. 687, 6 Sup. Ct. 601, 29 L. Ed. 774.)

2. Complaint is made of the action of the court in admitting evidence of the condition upon the ground, particularly

as to the character and extent of the vein disclosed by devel-
[2] opment made since the placer application. The question
involved was determined by this court adversely to appellant in
*Noyes* v. *Clifford,* 37 Mont. 138, 94 Pac. 842.

3. As a part of their proof, interveners introduced in evi-
dence, over the objection of plaintiff, a certified copy of the
declaratory statement of the Morning Star quartz lode mining
claim. This declaratory statement purports to have been made
by Charles Colbert in 1877, and recites that on July 2, 1877,
Colbert made discovery of mineral-bearing rock in place at a
point which is now within the boundaries of the ground claimed
by plaintiff. It is conceded that the declaratory statement was
not verified as required by the law in force at the time; but
in offering the certified copy counsel for interveners said: "The
purpose of offering this, may it please the court, is not to prove
title under the location itself, but for the purpose of showing
that this vein was known to exist at the time when he located
it by Charles Colbert, and to show what was done by Charles
Colbert and others with reference to working the vein." In
*O'Donnell* v. *Glenn,* 8 Mont. 248, 19 Pac. 302, this court held
that a declaratory statement which does not contain the required
[3] affidavit is void, and that decision has been followed uni-
formly since. (See *Hickey* v. *Anaconda Copper Min. Co.,* 33
Mont. 46, 81 Pac. 806.) Since the Morning Star declaratory
statement was void, the receipt in evidence of a certified copy
of it was error.

It is apparent from the statement of counsel made when the
copy was offered that the purpose of introducing it was to
show general knowledge on the part of the people of the com-
munity that a vein existed within the boundaries of the placer
prior to the application for patent, presumably upon the theory
that proof of such condition in 1877 would tend in some degree
to establish knowledge of a similar condition when the appli-
cation for placer patent was made in February, 1880. That a
[4] void instrument cannot impart constructive knowledge to
anyone is elementary; and the fact that the trial court admitted
this evidence, and that in finding No. 1 reference is made to

the Morning Star location, and the further fact that the court did not find specifically that the placer patentees had actual knowledge of the existence of the vein at the time when they applied for patent, but only that they had such knowledge, actual or constructive, seem to justify the conclusion that the court must have attached some importance to the contents of this declaratory statement.

In order to exclude a lode from a placer claim, the lode must have been known at the time the application for placer patent [5] was made; but actual knowledge on the part of the placer applicant is not absolutely essential. In *Iron Silver Min. Co. v. Mike & Starr G. & S. Min. Co.*, 143 U. S. 394, 12 Sup. Ct. 543, 30 L. Ed. 201, it is said: "It is enough that it be known, and in this respect, to come within the intent of the statute, it must either have been known to the applicant for the placer patent or known to the community generally, or else disclosed by workings and obvious to anyone making a reasonable and fair inspection of the premises for the purpose of obtaining title from the government." This rule has been followed in the mining states generally. (*Brownfield* v. *Bier*, 15 Mont. 403, 39 Pac. 461.)

It seems a fair inference from this record that the placer patentees who denied actual knowledge of the existence of a vein within the boundaries of their placer claim at the time of their application for patent were charged with knowledge of the existence of such vein by the evidence furnished by this declaratory statement. In so far as the copy of the declaratory statement was offered to prove the extent or character of the work done by Colbert, it was subject to the objection that it was not the best evidence, in addition to the other objection considered. The immateriality of the evidence is also apparent, since neither plaintiff nor interveners claimed under the Morning Star location. In fact, the evidence shows that that claim was abandoned.

4. The interveners also introduced in evidence, over the objection of plaintiff, a deposition of Charles Colbert, taken in 1895, in an action entitled *Montana Central Ry. Co.* v. *Midgeon*

*et al.* The deposition was not taken in a case in which any of the parties in this action were interested, but it is contended that it was competent to prove by it declarations made by Colbert to the effect that there was a known lead, lode, or vein within the boundaries of placer 765 at the time the application for placer patent was made, and this upon the theory that at the time the declarations were made Colbert owned the placer ground now claimed by the plaintiff, and that the declarations were against interest. If the admission of these declarations can be justified at all, it must be done under the provisions of section 7866, Revised Codes, as follows: "Where, however, one derives title to real property from another, the declaration, act or omission of the latter, while holding the title in relation to the property, is evidence against the former." This section is but declaratory of the common law. It does not add to or subtract from the rule as it existed prior to the adoption of the statute. (*Frink* v. *Roe*, 70 Cal. 296, 11 Pac. 820.) In this last case the California court said: "Any declarations, acts or omissions of the grantor while holding the title in relation to the property, and which could have been introduced against him while an owner, may be introduced against his grantee— nothing more." In 1 Jones on Evidence, section 241, the reason for the rule is given as follows: "The principle upon which such evidence is received is that the declarant was so situated that he probably knew the truth, and his interests were such that he would not have made the admissions to the prejudice of his title or possession, unless they were true. The regard which one so situated would have to his interest is considered sufficient security against falsehood." (See, also, 2 Wigmore on Evidence, sec. 1080.)

However, when a declaration of this character is offered, the party making the offer must show (a) that it was made while [6] the declarant was holding the title to the property in controversy; (b) that the declarant was in fact the grantor of the party against whom the declaration is offered; and (c) that the declaration was against interest. The only evidence in this record touching Colbert's title to any portion of placer 765 is

furnished by a deed from Marsh and Nichols, the original placer patentees, to Emory, Tong, and Colbert, dated April 19, 1880, and conveying the following described property: "All that portion of lot numbered seven in section eighteen, T. 3 N., R. 7 W., lying north of a line drawn parallel with the south boundary line of said Lot No. 7, 10.91 chains distant therefrom; excepting that piece conveyed to George W. Maston." It appears sufficiently that lot 7, mentioned above, is placer 765; but, since there is not any description whatever given in this record of the portion which had theretofore been conveyed to Maston, it is impossible to know whether Colbert ever owned the land in controversy, whether he owned it at the time the declarations were made, or whether plaintiff derived its interest from Emory, Tong, and Colbert, or is the successor in interest of Maston. Under the pleadings, it was unnecessary for plaintiff to prove its chain of title from the original placer patentees; and since the interveners had the burden of showing that Colbert was the [7] grantor of plaintiff and failed, the declarations made by Colbert were hearsay and inadmissible against the plaintiff, under the provisions of the Code section cited above. (*Harrell* v. *Culpepper*, 47 Ga. 635.)

But the declarations were inadmissible for a further reason. Whatever interest Colbert acquired in placer 765 he retained until 1900. It appears, also, that he was one of the locators of the Green Copper quartz claim, which location it is alleged in the complaint in intervention was made in 1891, and it is fairly inferable that whatever interest, if any, he acquired in the quartz location he retained until after 1895. If we assume, then, that the portion of the placer conveyed to Colbert included the ground now claimed by plaintiff, and that the Green Copper was a valid quartz location, neither of which appears as a fact from this record, then we are confronted with this situation: Colbert while claiming a piece of ground as placer, and also claiming a portion of the same under a quartz location, makes a declaration against his placer interest and in favor of his quartz claim; that is to say, his declaration is to the effect that there was a vein—the one upon which the Green Copper

was located—within his portion of the placer at the time the application for the placer patent was made. The effect of this declaration, if true, is to prove that the extent of his placer claim is less than it purports to be; and, having conveyed away all that his placer purports to have been, the direct effect of this declaration is to destroy title to that portion of the placer [8] crossed by the vein, and a strip of twenty-five feet on either side thereof. In other words, his declaration destroys the record title to that portion of the placer. In *Dodge* v. *Freedman's Savings & Trust Co.*, 93 U. S. 379, 23 L. Ed. 920, the supreme court of the United States said: "Such declarations are competent only to show the character of the possession of the person making them, and by what title he holds, but not to sustain or to destroy the record title."

5. In a number of instances the court permitted the interveners to show, over plaintiff's objection, that there had never been any placer mining carried on on placer 765. The evidence was altogether immaterial. The placer patent to Marsh and Nichols established conclusively the fact that the ground was and is placer; and the effect of the patent cannot be overcome [9] by evidence that placer mining operations were never carried on. (*Dahl* v. *Raunheim*, 132 U. S. 260, 10 Sup. Ct. 74, 33 L. Ed. 324; *Butte & Boston Min. Co.* v. *Sloan*, 16 Mont. 97, 40 Pac. 217.)

6. The trial court found that at the date of the application for placer patent there was a well-known lode within the boundaries of placer 765 disclosed in workings at the Morning Star shaft; that the vein was such as to except it from the general grant of the placer patent, under section 2333, United States Revised Statutes (U. S. Comp. Stats. 1901, p. 1433). The complaint in intervention alleges that in June, 1889, Henry L. Haupt made discovery of mineral-bearing quartz in place within the boundaries of placer 765, and upon the same lode or vein which was known to exist at the time application for placer patent was made; that Haupt made and completed his location, designating it the Sunbury quartz lode mining claim. It is also alleged that in January, 1891, Ginsberg and others made dis-

covery of mineral-bearing quartz in place upon the same vein within the boundaries of placer 765; that they made and completed the location of the Green Copper quartz lode mining claim; that by mesne conveyances the interveners became the successors in interest of the locators of the Sunbury and Green Copper claims, and thereafter filed for record an amended declaratory statement of the Green Copper claim, "and ever since have held and owned the property under said amended declaratory statement." All these allegations were denied. Upon the trial, the interveners did not offer any evidence in support of the allegations above. It is insisted, however, by counsel for interveners that they were relieved from making such proof by a stipulation entered into by counsel for the respective parties at the trial, as follows: "First, that the plaintiff has acquired whatever right was given by [the placer] patent to the original patentees to the premises that are herein in dispute; second, that the interveners have acquired whatever right was obtained by the location of the Green Copper, the Sunbury, and the Green Copper as amended."

In finding No. 8 the trial court accepted interveners' theory, and decreed to them the vein and 25 feet on each side for 1,500 feet, and thereby carved out of the ground claimed by plaintiff a parcel 50 feet wide and about 1,500 feet long. That the stipulation is not open to the construction given it is apparent. It is an admission by plaintiff that interveners acquired whatever rights were obtained by the locators of the Sunbury and Green Copper claims, and the Green Copper as amended; but it does not admit that any one of these claims was a valid location, or that the locators ever acquired any rights whatever by virtue of them. The stipulation did not go further than to relieve interveners from deraigning their title after proving valid locations of those claims. Upon the record before us, interveners were not entitled to affirmative relief. Assuming the existence of a known lode within the placer at the time the application for patent was made, such lode is open to location at this time, so far as we are informed by this record; and, if

so, the trial court cannot by its decree preclude the plaintiff or anyone else from locating it.

As said above, the interveners apparently based their claim upon the Green Copper location as described in their amended declaratory statement; but they plead that Haupt in 1889 located the Sunbury claim, while the Green Copper was not located until 1891, and the evidence discloses that the Green Copper discovery shaft is within the boundaries of the Sunbury claim; that, if the Sunbury was a valid location, it is difficult to understand how they can predicate any right upon the Green Copper claim, or the same claim as described in their amended declaratory statement.

Other questions are suggested in the briefs, but they are not necessary to a determination of the cause upon this appeal, and may not arise again; but for the errors heretofore considered the judgment and order are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

Rehearing denied May 20, 1911.