KURTH et al., Appellants, *v.* LE JEUNE, Executors, Respondent.

(No. 6,340.)

(Submitted June 12, 1928. Decided July 20, 1928.)

[269 Pac. 408.]

*Messrs. Miller & Wiley,* for Appellants, submitted a brief; *Mr. C. W. Wiley* argued the cause orally.

*Messrs. Stranahan & Towner*, for Respondent, submitted a 'brief; *Mr. F. E. Stranahan* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The plaintiffs brought this action to recover a tract of ground, about eighteen acres in extent, of which they allege they have been at all times the owners and entitled to possession, and from which they allege the defendant wrongfully ousted and ejected them in 1921, and of which she has ever since wrongfully remained in possession; plaintiffs ask to be restored to the possession of the land, and for a money judgment: $250 for the value of a crop which was growing upon the land when defendant took possession, which she converted to her own use, and $750 as the reasonable rents and profits of the land during the period she has occupied it.

The defendant, after denials, admitted her possession of the land. She alleged that plaintiffs' cause of action, so far as the same applies to any damage for the seizing, taking or converting growing crops during any period prior to two years before the commencement of this action is barred by the provisions of section 9033 of the Revised Codes of Montana. She alleged that the government established a quarter-section corner upon the northerly line of section 24, Township 22 N., R. 6 E., equidistant between the northeast corner and the northwest corner of that section; that prior to 1921 Peter Jaraczeski, the then owner of the northwest quarter of section 24, claimed by the plaintiffs, for the purpose of attempting to appropriate to his own use a portion of the east half of the section, now owned by the defendant, removed the government monument properly marking the center of the north half of the section on its northerly line eastward a distance of 619 feet,

thus making the east half of the section on its north line appear to be only 2,021 feet in width, and the west half 3,259 feet in width, which Jaraczeski confessed when about to die; and she alleges that through proper proceedings she caused the marker to be put in its rightful place. Plaintiffs replied. Upon trial the jury found for the defendant. The plaintiffs' motion for a new trial having been denied, they appealed.

1. In order to determine the question presented by defendant's plea of the statute of limitations we must first consider the nature of the action. Clearly it is in ejectment, with claim for mesne profits.

In Chapter XIX of his work on Ejectment Mr. Newell discusses the compensation which the successful plaintiff in an action for the recovery of real property is entitled to by reason of the withholding of the property from him by the defendant. Properly· speaking, he says, this compensation is designated as mesne profits. "Mesne profits are the rents and profits, or the real value of the use and occupation of the real property recovered in an action of ejectment during the period the property has been wrongfully withheld." (Newell on Ejectment, 606.) The period of limitation provided with respect to an action for the recovery of real property or the possession thereof is ten years (sec. 9015, Rev. Codes 1921), and the same limitation applies to "an action for mesne profits of real property." (Sec. 9028, Id.)

The statute pleaded by defendant relates to "an action for injury to or for waste or trespass on real or personal property" (sec. 9033, subd. 2, Rev. Codes 1921), and does not apply to the condition presented in this action.

2. It appears that the government surveyed section 24 and adjacent sections in 1873, and presumably the customary markers were placed upon the ground at the time. Early in 1911, Amelia Jaraczeski and Harry C. Churlien located homesteads in section 24, Jaraczeski taking the northwest quarter and Churlien the east half of the section. Each located with reference to the quarter-section corner in question. Each

eventually received patent from the government for the lands located. In the letters patent the lands conveyed were described by legal subdivisions. On October 23, 1916, Amelia Jaraczeski conveyed her land to her son Peter Jaraczeski who, on November 24, 1916, conveyed it to Sam Kurth and J. A. Kensey, one of the plaintiffs. In March, 1921, Sam Kurth conveyed his interest in the land to one Ryffel, who in October 1921, conveyed the same to Rodney H. Kurth and Lloyd S. Kurth, plaintiffs. Churlien conveyed his land to defendant in 1917. Upon the application of Harry Churlien, Amelia Jaraczeski, Peter Jaraczeski and other settlers in the vicinity, the county authorities in November, 1913, established a public highway, beginning at the southeast corner of section 18, Township 22 N., R. 7 E., where a public highway existed, running thence west on the section line "to the ¼ cor. on north boundary of section 24, T. 22 N., R. 6 E., thence south following the half section line as nearly as practicable ½ mile to the center of said sec. 24." The road ran west to the stone, which is the focal point in this case, and then turned south.

A fence built by Jaraczeski ran parallel with and adjacent to the highway from the quarter-section monument running south. The monument was but 2,021 feet from the northeast corner of section 24, and 619 feet east from the center point along the north line of the section.

In the summer of 1921, the defendant, finding that the tract occupied by her did not contain 320 acres of land, set about to remove the quarter-section monument from the place it then occupied to the center point of the north line of the section. Application was made to the surveyor-general, who refused to remove the stone but referred her to the county surveyor, giving the rules prescribed by the government for restoring lost and obliterated monuments. The defendant then employed the county surveyor, who made a survey of the north line of the section and set a stone midway thereon. He also surveyed south from the stone he had set, to the center of said section, leaving a strip of land on the west side for a pro-

posed highway. Later in the year the defendant built a fence from the stone set by the surveyor south to the center of the section (along the proposed highway), thereby inclosing the tract of land in dispute. At that time there was a growing crop of wheat cultivated by the plaintiffs on the tract of land so fenced in by the defendant, which she converted to her own use, and the defendant has occupied, cultivated and held the disputed tract continuously since she took possession of the same. On August 31, 1926, the plaintiffs brought this suit.

It is the custom of the government in its survey of public lands to set stones, called quarter-section monuments, half-way between two sections. The stones are marked "¼." But they are seldom found exactly halfway between the sections, and sometimes are long distances from the halfway point. The stone in question had the appearance of a government monument; there was a quarter mark upon it, and the witness, a surveyor, saw two faint pits alongside. Pits are dug on either side of quarter monuments. "It was set in the ground in good shape." "It did not show anything that would lead me to believe that it was not a regular government stone."

Charles Brow, who lives on section 13 north of section 24, testified that he knew the quarter-section monument in 1910, and knew when Jaraczeski built the fence south from that point. The stone was in the same position the day the fence was built as it was in 1910, when the witness used it as a guiding stone in locating his own corners. The stone was never moved from the place it occupied in 1910.

Nels Skaiaa filed upon his homestead which is in section 19, adjoining section 24 on the east. He saw the quarter-section monument on the north line of 24 in 1910. "It looked solid in the ground, and was never moved—grass grew thick on it. It is a fact that the county road was built on a line from that corner. I recollect that Peter Jaraczeski built a fence on the east side of that quarter. That was in the summer of 1912. He built a fence south from that corner stone, and the

corner stone at that time when Jaraczeski built the fence from it south was in the same position that it was in when I saw it in 1910, exactly.'' After the road was laid out Churlien, the owner of the east half of the section, although knowing the stone was not equidistant from the section corners of 24, built a fence thirty feet from the corner stone—''from this same corner stone in dispute west from Churlien's and east from Jaraczeski's homestead.''

The testimony of Ferdinand Stern, who settled in the vicinity in 1909, and who in 1911 showed Peter Jaraczeski the land which his mother took up as a homestead, who, as he said, ''located'' Jaraczeski on the land, corroborates that of Brow and Skaiaa with respect to the position of the monument in dispute, and the testimony of these witnesses is not contradicted.

The defendant, over objection, was permitted to introduce in evidence an affidavit dated June 21, 1921, in which four persons stated that they were present some two years before, when Peter Jaraczeski, then at his home in Great Falls and sick unto death, told the defendant that in order to get more good plow land he had, before he sold the northwest quarter of section 24 to Kurth and Kensey, moved the government monument, which was at the northeast corner of his land, east along the north section line, and thereby had obtained more land than belonged to him, and that he had moved the stone before he fenced the land.

Joe Le Jeune, husband of the defendant, and one of the signers of the affidavit, gave oral testimony to the same effect. The defendant testified likewise.

Mrs. Newman, sister of Peter Jaraczeski, over objection, was permitted to testify that on July 4, 1914, he told her he had moved the monument in order to get some of Churlien's land.

After reflection, and upon its own motion, the court struck out the testimony respecting the declarations of Jaraczeski and instructed the jury to disregard them. In this the court clearly was right.

Section 10510, Revised Codes 1921, provides that where one derives title to real property from another, the declaration, act or omission of the latter, while holding title, in relation to the property, is evidence against the former. When a declaration of this character is offered, this court said in *Washoe Copper Co.* v. *Junila*, 43 Mont. 178, 115 Pac. 916, "the party making the offer must show (a) that it was made while the declarant was holding title to the property in controversy; (b) that the declarant was in fact the grantor of the party against whom the declaration is offered; and (c) that the declaration was against interest."

Evidence may be given upon a trial as to the act or declaration of a deceased person done or made against his interest in respect of his real property. (Sec. 10531, Rev. Codes 1921, subd. 4.) This section is consistent with 10510, supra.

The declaration of Peter Jaraczeski alleged to have been made on July 4, 1914, was long before he held title to the property, and the alleged declaration of 1919 was when he did not have any interest therein, having sold it. It is urged by defendant that in 1919 Jaraczeski did have an interest in the property for the reason that he had given his grantees warranty deed; but this will not do. Neither statute mentioned above appears to warrant any such holding and we have not found any authority which would sustain such construction. To show the fallacy of the position it is only necessary to point out that an insolvent grantor, impelled by one motive or another, might be willing, even anxious, to make statements which would seriously impair, if not destroy, a title which he had conveyed.

One of the plaintiffs, Lloyd S. Kurth, testified that his father purchased the northwest quarter of section 24 from Peter Jaraczeski and that his father and uncle had a survey made of the property. The record indicates that Jaraczeski had then parted with his title. Jaraczeski accompanied the party during the survey. They found the stone and the appearance was that it had been there for some time and had not been

removed recently. "There was a road there and the land was fenced on the east side. The county road ran parallel with the fence. That was pointed out to me as the boundary by Peter Jaraczeski." But even if the title had not then passed from Jaraczeski, as defendant urges, we are unable to see that the testimony which was stricken out by the court was competent to disprove the testimony of Kurth that Jaraczeski at the time of the survey pointed out the stone and the boundary.

It is clear to us also that the testimony was not competent as showing common reputation existing previous to the controversy respecting a disputed boundary. The controversy was sharply defined as to whether Jaraczeski actually had moved the quarter-section monument and no evidence was offered tending to show common reputation as to the boundary. Nor is there any call here for an application of the doctrine which admits, as of necessity, hearsay testimony as to ancient boundaries.

Upon final analysis, it appears beyond controversy that there is competent testimony in the record tending to show that the quarter-section monument was placed by the government 2,021 feet west of the northeast corner of section 24; that it was in its original place when Mrs. Jaraczeski located her homestead, and that it has never been moved. And there is no testimony in the record whatsoever to the contrary. Such being the case the parties must be governed by the monuments upon the ground.

In *Myrick* v. *Peet*, 56 Mont. 13, 180 Pac. 574, this court quoted the following from Tiedeman on Real Property, section 832: "The public lands of the western territories, which became the property of the United States government upon the formation of the present Union, were by Acts of Congress surveyed and divided up into townships, sections and subdivisions of sections. When afterward lands were sold to private individuals, they were always described by referring to the number of the township, section, and subdivision of the

section. The boundaries of these sections and of the quarter and half sections were marked for the most part by artificial monuments, which constituted the corners of these tracts of land. * * * Before courses and distances can determine the boundary, all means for ascertaining the location of the lost monuments must first be exhausted.''

When permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement, either of lines, angles or surfaces, the boundaries or monuments are paramount. (Sec. 10683, subd. 2, Rev. Codes 1921; *Myrick* v. *Peet,* supra.)

The plaintiffs are entitled to judgment for the possession of the land and all that remains to be done is to ascertain the amount of their damage—for the mesne profits—while the defendant wrongfully withheld the land from them.

Since the appeal was filed the defendant has departed this life and an order has been made substituting the executor of her last will and testament as respondent here.

The judgment is reversed, with directions to the district court of Chouteau county to enter judgment for the plaintiffs for the possession of the land in controversy, and to grant them a new trial upon the damage issue.

*Reversed and remanded.*

ASSOCIATE JUSTICES MYERS, STARK, MATTHEWS and GALEN concur.