BEST, Respondent, *v.* LONDON GUARANTEE & ACCIDENT CO., Appellant.

(No. 7,424.)

(Submitted June 29, 1935. Decided July 5, 1935.)

[47 Pac. (2d) 456.]

334

*Mr. John G. Brown* and *Mr. William A. Brown,* for Appellant, submitted a brief; the former argued the cause orally.

*Mr. C. F. Holt* and *Mr. S. C. Ford,* for Respondent, submitted a brief; *Mr. Ford* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On June 20, 1933, Walter A. Best was employed as a cement finisher on certain improvements being made by the Great Western Sugar Company at its sugar factory in Billings. While in the performance of his duties, he sustained injuries as the result of an industrial accident, which was reported to his employer. The injured man filed a timely claim for compensation which, after hearing had, was denied by the Industrial Accident Board. A formal motion for a rehearing, unsupported by affidavits, was denied and the claimant appealed to the district court of Yellowstone county, where a trial was had on the record presented by the board and additional testimony. The "additional testi-

mony'' covered the entire line of inquiry concerning the accident, the condition of the claimant prior to and immediately succeeding the injury, and the nature and extent of the injury, as well as new matter, and his condition subsequent to the hearing and decision of the board, a portion of which was presented by depositions. The court reversed the board and entered judgment in favor of the claimant and against the defendant London Guarantee & Accident Company, the insurance carrier for the sugar company, operating under "plan 2" of the Workmen's Compensation Act (Rev. Codes 1921, secs. 2978 et seq.). This judgment awards the claimant $18 per week for a period of 300 weeks, beginning with the date of the accident, and orders that the amount due to the date of the judgment be paid in a lump sum, with costs and disbursements. The defendant has appealed from the judgment.

The defendants make fourteen specifications of error which, in their entirety, but present the questions hereinafter considered.

The first specification is that, since the petition for rehearing did not set forth specifically, and in full detail, the evidence sought to be introduced on a rehearing or appeal, and did not show why, with due diligence, the evidence could not have been produced at the hearing, the court erred in considering anything other than the record made before the board.

Section 2955, Revised Codes of 1921, prescribes the grounds on which the rehearing may be asked, and section 2957 declares that "the application for rehearing shall set forth specifically and in full detail the grounds upon which the applicant considers said order, decision, * * * or regulation to be unjust, or unlawful, and shall in other respects conform to such rules and regulations as the board may prescribe." This latter section then authorizes the board to make rules to govern the procedure on rehearing.

Under a statute similar to our section 2957, above, and an additional section which finds no counterpart in our Act (sec. 77, Workmen's Compensation Act of Colorado [Laws 1915, p. 556]), which provides that "no action * * * to set aside"

any finding, order, or award of the commission "shall be brought unless the plaintiff shall have first applied to the commission for a hearing thereon," the supreme court of Colorado has held that the commission must be given an opportunity to review its own findings before resort may be had to the courts (*Passini* v. *Industrial Commission*, 64 Colo. 349, 171 Pac. 369), and that error and objections not specified in the petition for a rehearing cannot be considered by the courts, as the petition for review by the commission defines the limits of the inquiry in subsequent proceedings (*London Guarantee & Accident Co.* v. *Sauer*, 92 Colo. 565, 22 Pac. (2d) 624). Whether, without such a provision as Colorado's section 77, we would hold, in a proper case, as did the Colorado court, on our declarations respecting appeals in civil or criminal cases in which no motion for a new trial is made, we need not now determine.

The record here discloses that the claimant was not present at the original hearing on his claim, he being then confined in a hospital, and that he was not there represented by counsel. It further appears that his petition for a rehearing was drafted by the chairman of the board and submitted for his signature only. The claimant was not advised that he must supplement the petition drafted by the·chairman by any further statement of his grounds for a rehearing, but was advised that he need not employ an attorney until after the board disposed of his petition for a rehearing, and, in effect, that all that was required of him at that time was the signing of the petition presented to him, the chairman stating in his letter transmitting the petition to a friend of the claimant, "in other words, his signing the·inclosed petition for a rehearing will save him the necessity of an attorney for the present."

The claimant having done all that was required of him by the board, cannot now be said to have lost his rights on appeal to the district court, under the rule of liberal construction, without regard to technicalities, which must be, and always has been, applied to proceedings of this nature by this court. In fairness to the chairman of the board, it should be noted that it is not

the board but an insurance carrier urging the adoption of the technical rule.

The petition here states all the grounds for a rehearing permitted by the statute, except fraud, in the language of the chairman, and was sufficient to raise all questions which may be raised in the courts after a petition for a rehearing and was so intended by the chairman.

It is next asserted that there was no timely or sufficient showing of "good cause" to permit the trial court to admit "additional testimony" at the trial, under the provisions of the Act (sec. 2960, Rev. Codes 1921). Claimant's application for leave to introduce additional testimony was made at the opening of the trial, in the presence of opposing counsel who had advance notice that such an application would be made, inasmuch as, long prior to the trial, counsel had been given notice of the taking of depositions to be used on the trial and had been present and cross-examined deponents. The application was timely. As this court has heretofore said: "In the absence of some statutory requirement as to the manner in which the discretion of the court shall be invoked, the informal presentation of persuasive reasons why additional testimony should be taken, made in the presence of opposing counsel who thus has an opportunity to be heard on the subject, is a sufficient showing of 'good cause.' " (*Sykes* v. *Republic Coal Co.*, 94 Mont. 239, 22 Pac. (2d) 157, 159.)

The showing thus made was a statement of facts, substantiated on the trial, showing that at the time of the hearing the claimant was confined to a hospital bed in Great Falls and was without means to employ counsel, and, being neither personally present nor represented by counsel, he was without benefit of cross-examination of defendant's witnesses, while, on the other hand, the defendant was represented by eminent counsel who subjected witnesses favorable to the claimant to vigorous cross-examination, the damage of which claimant was in no position to repair; that claimant was advised that it was not necessary that he be present or represented at the hearing, but that the board would protect his interests and develop the testimony necessary to

establish his claim, and that witnesses important to his case were not called and others called were not examined in detail; that the situation resulted in an incomplete presentation to the board and an adverse decision rendered on a misunderstanding of the facts.

It is true that the legislature intended to make the board a poor man's court wherein claimants could appear and secure justice without the benefit of counsel, but the board is the administrator of the Act, and when, as here, the chairman alone conducts hearings, he sits as a judge to determine the matter as between litigants. When the dispute is between a claimant and the accident board, the chairman may be able to protect the interests of the claimant as well as the fund, but when the proceeding is against a powerful employer or an insurance company, the chairman cannot deny the defendant the right to appear by astute counsel, and where, as here, the claimant is without means to employ counsel, the denial of the right to appeal on technical grounds may result in unintentional injustice and defeat the very purpose of the Act, by compelling every litigant to employ counsel to the end that technicalities in the hearing and on petition for a rehearing shall be observed.

On presentation of an application for the admission of additional testimony, some discretion must be vested in the court to determine what is "good cause" within the meaning of the statute, and where the court grants the application on such a showing as was here made, and the petitioner shows to the court that he was taken by surprise by the evidence adduced on the hearing, it cannot be said that the court abused its discretion and that the additional evidence should not have been received. (*Woin* v. *Anaconda C. M. Co.*, 99 Mont. 163, 43 Pac. (2d) 663.)

It is, however, contended that because testimony was permitted concerning the accident and, in fact, covering all questions involved, the trial was *de novo* and in disregard of the decision of the board. We do not so view the record. The court based its judgment on the record made before the board and on additional evidence, and so recited in the judgment. While much of the evidence taken on the trial was cumulative, it was

necessary from the claimant's point of view, to-wit, that the true facts were not properly brought out on the hearing and that the decision of the board was based on a misconception of the facts. More cogent reason exists here than was shown in the *Woin Case,* cited above, wherein this question was raised and determined adversely to the appellant.

Counsel argue that, under the Act, "the power given the district court is that of review, rather than a trial anew" (*Willis* v. *Pilot Butte Min. Co.,* 58 Mont. 26, 190 Pac. 124, 125); that the Civil Practice Act applies and under it the appellate court cannot consider additional evidence, and that the Compensation Act gives "peculiar force" to the findings of the commission (secs. 2938, 2948, Rev. Codes 1921); "then, why should the retrial practice be any harsher than that of the Civil Practice Act?" The answer is that the legislature, having power to repose original jurisdiction, or appellate jurisdiction over such cases as it sees fit, did not see fit so to provide. The legislature declared that the trial in the district court shall be *de novo,* but by its further provisions destroyed the force of that declaration to a certain extent (*Willis* v. *Pilot Butte Min. Co.,* supra), so that the trial is not "the familiar trial which takes place upon an appeal from a justice's court to the district court." If the appeal is heard upon the record of the board alone, it is a review; if additional testimony is taken, to that extent it is a trial *de novo.* (*Dosen* v. *East Butte C. Min. Co.,* 78 Mont. 579, 254 Pac. 880, 885.) Under the Compensation Act, the board is made the trier of fact; the case comes to the district court with the presumption that the board has decided correctly (*Rom* v. *Republic Coal Co.,* 94 Mont. 250, 22 Pac. (2d) 161); where the trial is had on the record made before the board, the court is not justified in reversing the board if there is any substantial evidence to support its findings (*Morgan* v. *Butte Central Min. Co.,* 58 Mont. 633, 194 Pac. 496), and, in any case, if the evidence before the court does not clearly preponderate against the findings of the board, a judgment reversing the board will in turn be reversed by this court (*Rom* v. *Republic Coal Co.,*

supra). On the other hand, if the evidence does so preponderate, the judgment of the court reversing the board must be sustained. (*Moffett* v. *Bozeman Canning Co.*, 95 Mont. 347, 26 Pac. (2d) 973.)

Herein, testimony concerning all questions presented by the claim filed was properly admitted under the peculiar circumstances shown, for the purpose of comparison with the testimony adduced before the board, to determine whether or not the decision of the board was based on a misunderstanding of the nature of the injury, and whether or not an injustice was done the claimant inadvertently, by reason of the fact that through no fault of his he was not present or represented by counsel, while the defendant was so represented.

It is next contended that the court erred in admitting certain depositions taken weeks before the trial, on notice to counsel for the insurance carrier and in the taking of which he took part. Section 10645, Revised Codes 1921, provides that the testimony of a witness may be taken by deposition "in an action at any time after the service of the summons * * * and in a special proceeding after a question of fact has arisen therein." No motion to suppress the depositions was made prior to or at the trial, but when they were offered in evidence, after the court had granted permission to introduce additional evidence, objection was interposed on the ground, principally, that this is a special proceeding and no "question of fact" had arisen therein at the time the depositions were taken. Since such a case as this comes to the district court by appeal and not by the filing of a complaint — the only method of beginning an "action" — it should be classified as a "special proceeding" within the meaning of the last-quoted section. (See *State ex rel. Gattan* v. *District Court*, 39 Mont. 134, 101 Pac. 961.)

However, the Compensation Act contemplates the taking of depositions in the manner prescribed by law. (Sec. 2939, Rev. Codes 1921.) Without deciding whether or not the objections raised were warranted, we hold that the defendant waived its right to object on the ground presented by his delay. As was

said by the Supreme Court of the United States in *Doane* v. *Glenn*, 21 Wall. 33, 35, 22 L. Ed. 476, and quoted with approval by this court in *Murray* v. *Larabie*, 8 Mont. 208, 19 Pac. 574, 576: "None of the objections * * * go to the testimony of the witness. All of them relate to defects and irregularities which might have been obviated by retaking the deposition. It does not appear that any notice beforehand was given to the counsel of the plaintiffs that they would be made. In such cases the objection must be noted when the deposition is taken, or be presented by a motion to suppress before the trial is begun. The party taking the deposition is entitled to have the question of its admissibility settled in advance. * * * This is demanded by the interests of justice." (See, also, *In re Colbert's Estate*, 51 Mont. 455, 153 Pac. 1022.)

Finally, it is contended that the evidence does not preponderate against the findings of the board, and that, therefore, the court was without authority to set aside the findings and render judgment contrary to the decision of the board. The undisputed facts placed before the board are as follows: The claimant, working night shift as a cement finisher, at about 1:30 A. M. on June 21, 1933, mounted a scaffold carrying "a bucket of mud," weighing 65 to 70 pounds; he stepped on the end of a loose plank and fell a distance of approximately 4 feet, striking across a 2x4 or 2x6 on his abdomen. He worked to within an hour of the end of his shift, when he laid off on account of pain. He went to the company's doctor about 10 next morning; the doctor found no external bruises or abrasions and gave him a heat treatment for strained muscles. The claimant laid off twenty-four hours and thereafter worked a shift and a half when he quit his job and returned to his home in Great Falls, where he was under the care of Dr. McGregor, and in the hospital most of the time, up to and after the trial in the district court. From the time of the accident, the claimant suffered pain in the abdomen, accompanied by vomiting and nausea. On August 19, 1933, his condition became worse. Dr. McGregor called a consultation and performed an "exploratory operation," by which

he opened the abdomen, disclosing a white area on the right lobe of the liver the size of a baseball "in the center of which was thickening of the glisson capsule which proved to be a cicatrix, which scarred." The gall bladder was found to be diseased and was removed. The claimant had an uneventful recovery from the operation, but did not get better and was given a thorough examination with the usual tests to determine whether he had any disease which might cause his condition, without result. Before the accident, the claimant was in perfect health; since that time he has been a total disability.

Dr. McGregor diagnosed claimant's ailment as "neurosis of the stomach," which could be caused by "trauma," but he did not know if it was.

Dr. E. S. Porter, called by the defendant, testified that Dr. McGregor's testimony indicated a rupture of the capsule of the liver which, in his opinion, would have caused more severe pains and more positive symptoms than those described, and was therefore of the opinion that the condition of the liver was due to some systemic disease of long standing. Dr. Andrews testified along the same lines.

The chairman of the board submitted the record to Dr. John L. Treacy, of Helena, who made a report to him adverse to the claimant, and on this report the board rendered its decision against the claimant, incorporating therein findings made by Dr. Treacy.

On the trial in the district court it was made clear that Dr. McGregor's description of the injury to the liver referred to an injury to the substance of the liver, and not to a rupture of the capsule; that the scar tissue showed through and adhered to the under side of the capsule. On the stand Dr. Treacy admitted that his conclusions, adopted by the board, were based upon the assumption of a rupture of the capsule about the liver, and on his cross-examination practically left no reasonable conclusion to be drawn other than that claimant's condition resulted from "trauma," the blow received in falling, causing a rupture of the liver substance.

Dr. Allard, testifying for the defendant, described a number of diseases which might cause the condition found in the liver, but on cross-examination testified that, if the claimant had never had any of those diseases (which the record shows he had not), the condition could not have been caused by anything mentioned by the doctors appearing for the defendant except "the infarct mentioned by Dr. Treacy," and that an "infarct" (stoppage of a blood vessel), sufficient to form the scar tissue described, "would not usually have some symptoms. An infarct is usually painless. It does not affect the physical condition of the patient."

The expert testimony is to the effect that an injury which ruptures the capsule of the liver usually causes death or immediate collapse or unconsciousness; a rupture of the liver substance causes pain, nausea and vomiting, but not necessarily a collapse.

Dr. Allard, on cross-examination, was asked to assume the facts proved on behalf of the claimant and say whether under those conditions the claimant's neurotic condition was the result of the injury. His answer was, "Yes, if the Industrial Accident Board recognizes neurosis." Neurosis resulting from ▮▮ injury received in an industrial accident is compensable. (*Sykes* v. *Republic Coal Co.*, supra.)

And even if the claimant had, prior to the accident, a diseased condition of the gall bladder, which was dormant, but was inflamed and rendered active by the injury to the liver, as described by Dr. McGregor, the fact of the preexistence of the disease would not bar compensation. (*Nicholson* v. *Roundup Coal Co.*, 79 Mont. 358, 257 Pac. 270.)

The evidence clearly preponderates against the findings and decision of the board; the evidence before the court clearly demonstrates that the case was not fully developed before the board, through no fault of the claimant, and that the board's decision resulted from the misunderstanding of conditions described on the part of Dr. Treacy, who, by reporting his findings made on a false premise, led the board into error.

Complaint is made that the court made a finding that the ▮▮ ⁻claimant is entitled to $17 per week, and then rendered judgment for $18 per week. As the claimant has a wife and child under eighteen years of age, he is entitled to $18 per week (sec. 2912, Rev. Codes 1921, as amended by Chap. 177, Laws of 1929), and the judgment is correct in this regard.

The claimant has made cross-assignments to the effect that the ▮▮▮ court erred in not finding that claimant's injury produced total disability permanent in character, and in not thereon awarding him compensation for 500 weeks instead of 300 weeks. The error, if error it be, was not brought to the attention of the trial court by motion for new trial or otherwise, and the claimant has not appealed from the judgment. Section 9751, Revised Codes of 1921, permits cross-assignments of errors, but "it has application only to cases in which the respondent makes cross-assignments upon errors on rulings adverse to him and preserved in a bill of exceptions, in order to enable this court to determine whether those complained of by the appellant were compensated or rendered harmless by reason of them." (*Olcott* v. *Gebo*, 54 Mont. 35, 166 Pac. 300, 301.) The section was not intended to do away with cross-appeals in cases wherein a party feels himself aggrieved by rulings on matters separate and distinct from that sought to be reviewed by the appellant. (*In re Silver's Estate*, 98 Mont. 141, 38 Pac. (2d) 277.) The liberality of construction of the Compensation Act for the protection of the laymen-claimants cannot be extended to the disregard of the ordinary rules of practice and procedure, particularly when the acts or omissions of counsel for the parties are under consideration.

Finding no reversible error in the record, the judgment must be affirmed. Remittitur forthwith.

ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, takes no part in the foregoing decision.