OSNES LIVESTOCK CO. ET AL., RESPONDENTS, *v.* WARREN, APPELLANT.

(No. 7,571.)

(Submitted September 24, 1936. Decided November 9, 1936.)

[62 Pac. (2d) 206.]

287

Messrs. *Towner & Lewis* and Messrs. *Belden & DeKalb*, for Appellant, submitted a brief; Mr. *Vernon E. Lewis* and Mr. *H. Leonard DeKalb* argued the cause orally.

Mr. *John L. Slattery*, Messrs. *Cooper, Stephenson & Glover* and Mr. *W. H. Hoover*, for Respondents, submitted a brief; Mr. *Sam Stephenson* and Mr. *Hoover* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This action was brought to secure an adjudication of the water rights of the plaintiffs and the defendants to the waters of Cottonwood Creek, rising in the southerly part of the Highwood Mountains and flowing easterly in Chouteau county. By appropriate pleadings the various parties set up their respective claims for appropriations made by themselves or their predecessors. The action was tried to the court. Findings of fact were made and filed, and thereafter a decree was entered in conformity therewith. This appeal is from the judgment perfected by the defendant Warren.

The trial court adjudicated to the plaintiff Osnes Livestock Company a first right of 242.6 inches as of July 1, 1883, a second right of 117 inches as of date of June 3, 1896, and a third right of 160 inches as of date of June 8, 1896; to the plaintiff Merrimac Cattle Company 15.40 inches as of April, 1897; and to the defendant Warren 40 inches of Breed and Squaw Creeks, tributaries of Cottonwood Creek, as of May 10, 1898, and 49 inches as of May 24, 1897, and 215.23 inches as of May 27, 1899.

Other rights subsequent to those of defendant Warren were adjudicated in favor of the plaintiff Osnes Livestock Com-

pany, which rights are not here in question. The small right of the plaintiff Merrimac Cattle Company is not here assailed, and hereafter when we refer to the plaintiff, it will relate solely to the plaintiff Osnes Livestock Company. No contention is here involved with reference to the priority or amount of defendant Warren's rights as found by the court.

Generally speaking, it is the broad contention of the defendant that, as to the three rights of the plaintiff, the court was in error in finding and deciding that they were prior to his rights. For the purpose of clarity we shall refer to the first right hereafter as the McDonald right, the second as the Hudson right, and the third as the French right, and we shall consider them, so far as practical, in the order named.

The specifications of error on behalf of the defendant all raise the question of the sufficiency of the evidence to support the court's findings and decree with reference to the above rights. In addition, the court, as a part of its judgment, found damages in favor of the plaintiff in the sum of $500, and likewise awarded the plaintiff a judgment for costs. Specifications of error are also directed at the correctness of the judgment of the court in awarding damages and costs.

We proceed now to a consideration of the McDonald appropriation. The lands in the township wherein the water was diverted and used under these various rights were unsurveyed until around the year 1899. Julia E. McDonald filed for record her notice of appropriation dated August 24, 1883, claiming a first water right of 300 inches of the waters of Cottonwood Creek, reciting therein that she had taken out a ditch on July 1 of that year carrying that amount of water. She made a desert land entry on lands along the creek which were then unsurveyed, on November 5, 1883, which was canceled on October 4, 1887. Julia E. McDonald, together with her husband, on May 2, 1887, executed a quitclaim deed, which was recorded on May 24, 1899, conveying to Charles S. Gibson and Alexander C. Johnson the ranch and "also the irrigating ditches and dams and water rights" of the McDonalds.

The conveyance describes other property, as well as the ranch itself, somewhat more in detail. Gibson and Johnson on May 2, 1889, by quitclaim deed recorded on May 24, 1889, quitclaimed to Isaac C. Libbay, Charles H. Merrill, and Elias Milliken a vast area of territory therein described, and also "13 locations of camps, corrals, fences, timber, lumber, irrigating ditches and dams thereon and now in our possession." No further mention appears in the record with reference to Libbay and Milliken.

Subsequently Merrill had a partner, or at least their business relations were akin to that of a partnership, by the name of Libby, and after the land on which the water under this right is and has been used since its inception had been acquired from the patentees, Libbay and Merrill conveyed it together with the water right to the plaintiff. It appears that the titles to the lands on which these waters were applied were acquired from the United States, or at least the greater part of them, by persons other than the copartnership prior to their conveyance by it to the plaintiff, although Merrill acquired a small portion of the lands by preemption. Some of them were acquired under the homestead laws, others by desert land entries, and still other portions by preemptions. There is no controversy here over plaintiff's present ownership of these lands. The various filings made by the entrymen, as the result of which patents were issued by the United States, were in the main made during the year 1900; none were earlier than that year.

As we understand the contentions of the defendant, it is conceded that Julia E. McDonald, at the time she initiated her right, was qualified so to do, and that she did at the time found by the court divert waters from the creek and apply them to a beneficial use. It is, however, contended that the plaintiff can trace title to only one-third of this right; that the McDonald right in its entirety was lost as such until after the date of the inception of the Warren rights; and that any water used after the conveyance by Julia E. McDon-

ald, or at least the cancellation of her desert land entry, was not legitimately used until after the inception of the Warren rights.

As we have already observed, after the conveyance by Gibson and Johnson to Libbay, Milliken and Merrill, the record is silent as to any conveyance affecting the rights of Libbay and Milliken. Defendant contends that by reason of the inability of plaintiff to show any privity between it and Libbay and Milliken, at most plaintiff could only claim one-third of the right owned by Julia E. McDonald. He seeks to invoke the rule frequently announced by this court, namely, that mere possession by one person of a water right initiated by another does not show such privity. "In order to make good his claim to the right as of the date at which it was initiated, the possessor must show some contractual relation between himself and the original appropriator." (*Kenck* v. *Deegan*, 45 Mont. 245, 122 Pac. 746, 748; *St. Onge* v. *Blakely*, 76 Mont. 1, 245 Pac. 532, 536.)

As we understand the contention of plaintiff in response, it is that under the decision in *Wills* v. *Morris*, 100 Mont. 514, 50 Pac. (2d) 862, we somewhat limited the force of this statement and there held that in the same circumstances the possessor of the land was presumed to be the owner of the right. Such, perhaps, would be the force of our decision if we had said nothing more therein than was expressed in the last paragraph discussing the Don Albee right, but in the first paragraph of the opinion discussing that right we directed attention to the fact that, in addition to the evidence discussed in the last paragraph, it appeared that as to the right under consideration a judgment adjudicating the identical right, and to which the plaintiff Wills and his predecessor in interest was not a party, was in evidence. In prior paragraphs of the same opinion we had held after considerable discussion that such a judgment was evidence of the right, and we there, in the light of the facts set forth in the opinion, recognized the presumption contended for by plaintiff, but here there

was no proof of a prior adjudication. We did not in the case of *Wills* v. *Morris*, supra, nor do we now, intend to depart from the doctrine of the *St. Onge Case*, nor do we now intend to retreat from our decision in the *Wills Case*.

Plaintiff further asserts that Merrill was a tenant in common with Libbay and Milliken, and that as such tenant in common his title extended to the entire right as against third persons and that as against such persons he has all of the possessory rights of an absolute owner of the whole, including the right to preserve the entire estate or right held in common; that if he used all the water, only his cotenant could object, and if he conveyed his interest, a stranger could not object to the right of the grantee to use all of the water.

In the early case of *Hopkins* v. *Noyes*, 4 Mont. 550, 2 Pac. 280, 283, this court, speaking generally with reference to the rights of cotenants, said: "One of the incidents of tenancy in common is that each of the co-tenants is entitled to the exclusive possession of the entire property as against the whole world, except his co-tenants. Therefore a co-tenant, in prosecuting or defending actions concerning the common property, may treat the same as his own as against every one except his co-tenant."

In *Meagher* v. *Hardenbrook*, 11 Mont. 385, 28 Pac. 451, 452, it appears that a number of cotenants had made an appropriation of water for mining purposes. Later two of the cotenants, being less than the whole number, proceeded to use water under this appropriation for purposes of irrigation in excess of their proportionate shares, and were adjudged by the trial court as against the plaintiff who was not a cotenant of this right, to be entitled to an appropriation to the extent of their use for irrigation. The court in the opinion with reference to this adjudication said: "Was this a lawful exercise of the rights of a tenant in common of said water as against all, except other tenants in common, who may not have consented to such change of use? We think this proposition must be answered in the affirmative, and such hold-

ing affirms the judgment of the court below. * * * That
one tenant in common may preserve the entire estate or right
held in common is a proposition so well settled it is unneces-
sary to cite authorities in support thereof. In this the tenant
in common is only preserving his own, as his right partakes
of the whole. It would seem to follow from analogy that
one tenant in common may, of course, preserve part of the
common estate or right. In the peculiar case of water-rights
it would appear to be so with more force, because the right
can only be preserved by both the use, and the necessity for
the use, for some beneficial purpose; so that a tenant in com-
mon, in preserving this right, can only preserve it to such
extent as he can use it.'' We find ourselves in accord with
the views as thus applied by this court and expressed in the
foregoing quotation.

Counsel for defendant, however, in order to avoid the force
of these conclusions, argue that this water right at
the time in question was an easement in gross and, therefore,
not susceptible of transfer or conveyance. This argument
proceeds upon the theory that at the time Gibson and John-
son conveyed to Libbay, Merrill and Milliken, so far as the
record discloses, had no right, possessory or otherwise, as the
result of the cancellation of the Julia E. McDonald desert
entry to the possession of the lands on which the water was
being used, and the right, if any, was not then appurtenant
to any land and, hence, it was an easement in gross. Such
a right, and in such circumstances, was said by this court in
the case of *Smith* v. *Denniff*, 24 Mont. 20, 60 Pac. 398, 401,
50 L. R. A. 741, 81 Am. St. Rep. 408, 411, to be ''akin to an
easement in gross at the common law.'' An easement in
gross under the more numerous decisions has been regarded
as being so personal to the original grantee as to be incapable
of voluntary or involuntary transfer. (2 Tiffany on Real
Property, 2d ed., 1226.) Considerations in favor of that
view were advanced by the court in the case of *Boatman*
v. *Lasley*, 23 Ohio St. 614, when it had under considera-

tion a right to pass over the land of another. The court made the following inquiries: "If such right be an inheritable estate, how will the heirs take? In severalty, in joint tenancy, coparcenary, or as tenants in common? If not in severalty, how can their interests be severed? If it be assignable, what limit can be placed on the power of alienation? To whom and to how many may it be transferred? Why not to the public at large, and thus convert into a public way that which was intended to be a private and exclusive way only?"

The learned author of 2 Tiffany on Real Property, second edition, page 1227, observed that it is difficult to see why "if it appears to be the case a profit in gross (profit à prendre) is capable of passing by voluntary transfer and by descent, an easement in gross should not be so capable." Profits in gross are recognized as being freely transferable. (2 Tiffany, supra, p. 1393.)

The underlying reason, as we gather from the examination of many authorities holding that an easement in gross is not assignable or transferable, is that advanced by the Ohio court, namely, if a transfer is permitted, the servient tenant by reason of transfer may be subjected to a burden far in excess of that contemplated by the grantor or so long as the right is enjoyed by the grantee alone. It is noteworthy that this court in classifying such a water right did not definitely place it in the class of easements in gross, but merely observed that it was akin to an easement in gross.

By the transfer of a water right no greater burden is placed upon the stream than that obtained prior to the transfer, for one who purchases a water right independent of the land to which it was theretofore appurtenant does not thereby enlarge or extend the right, and one who so purchases such a right is entitled to do only those things which the original owner of the water right might have done. (*Brennan* v. *Jones,* 101 Mont. 550, 55 Pac. (2d) 697, and cases there cited.) Hence, as applied to a water right which is held independent

of the land, transfer thereof does not result in creating additional burdens upon other appropriators, and therefore the reasons which have impelled courts to the adoption of a rule against the transferability of easements in gross are not existent with reference to a water right in gross, and when the reason of a rule ceases so should the rule itself. (Sec. 8739, Rev. Codes; *State ex rel. Whitlock* v. *State Board of Equalization,* 100 Mont. 72, 45 Pac. (2d) 684.) We accordingly hold that a water right in gross may be the subject of transfer.

The defendant contends that upon the cancellation of the ▉ Julia E. McDonald desert land entry the water right was thereby destroyed or extinguished. If the right was inchoate only at the time of this cancellation, such would doubtless be the rule, and the case of *Avery* v. *Johnson,* 59 Wash. 332, 109 Pac. 1028, on which counsel rely, supports that view; but in the light of the testimony in the record, the right of Julia E. McDonald was more than an inchoate right. When the right was fully perfected, that is, when there was a diversion of the water and its application to a beneficial use, it thereupon became a property right of which the owner could only be divested in some legal manner. He could thereafter use the water, or not, as he saw fit, or he could abandon the right, but abandonment is a voluntary act involving a concurrence of act and intent, the relinquishment of possession, and the intent not to resume it for a beneficial use. Neither alone is sufficient to bring about the abandonment of the right. (*St. Onge* v. *Blakely,* supra, and cases there cited.)

It is next contended on behalf of defendant that, since ▉ the record fails to disclose any right in Libby and Merrill subsequent to the cancellation of the Julia E. McDonald desert land entry to use this water right on the public domain, their position in using the water under the right was that of a trespasser, and that therefore the right which was vested in Julia E. McDonald was lost until after the incep-

tion of defendant's right. In other words, it is said in counsel's brief, in effect, that for more than thirteen years the use of this right amounted to a trespass.

Conceding, for the purposes of this opinion, that the owners of this right were trespassers for the period of thirteen years upon the public domain, and further conceding that plaintiff could claim no rights merely as a successor in possession within the rule adopted by this court in cases such as *Warren* v. *Senecal,* 71 Mont. 210, 228 Pac. 71, *Head* v. *Hale,* 38 Mont. 302, 100 Pac. 222, and *Hays* v. *Buzard,* 31 Mont. 74, 77 Pac. 423, nevertheless the plaintiff's position can be no worse than it would have been had it or its predecessors in interest during all that period of time failed to make any use of the water whatever, for in the case of *St. Onge* v. *Blakely,* supra, this court said: "Mere lapse of time, even in excess of the period prescribed in the statute of limitations, will not alone establish the abandonment of a water right or work a forfeiture thereof by nonuser, although it may constitute some evidence of an intention to abandon the right," citing cases. And in the same opinion it was said: "The evidence in this respect merely shows the nonuser of the water for an indefinite period while the owners were laboring under certain disabilities, and the resumption of the use thereof when possession was secured by those in a position to use the water, and the fact that other parties had, in the meantime, acquired junior rights, in no manner affected the owners' right to resume the use of his property." We know of no rule of law which provides for the enforced abandonment of a vested water right as a penalty for exercising it as a trespasser. We have held that a water right initiated in trespass is invalid, and that where it can only be exercised by committing a trespass, it may not be asserted as against the true owner of the land upon which the trespass is committed. (See review of our decisions in *Connolly* v. *Harrel,* 102 Mont. 295, 57 Pac. (2d) 781.)

In connection with the discussion of this particular contention of the McDonald right and with reference to

some of the subsequent rights, counsel for the defendant argue that the evidence discloses that no irrigation obtained on these lands prior to the year 1900. The greater part of the lands under the McDonald ditch consisted of desert land entries, and certified copies of many, if not all, of the filings made by predecessors in interest of plaintiff, obtained from the General Land Office, were offered and received in evidence over objection. In the declaration of the applicant, and also the affidavits of the supporting witnesses, appears the following statement: "That no portion of said land has ever been reclaimed by conducting water thereon." Some of the declarants were predecessors in interest of plaintiff, and others who were witnesses were predecessors in interest as to other tracts. These exhibits were not properly admissible to prove nonirrigation of the land in question. In order for a declaration of a predecessor in interest to be admissible, the proper foundation must be laid, which has been stated in the case of *Washoe Copper Co.* v. *Junila,* 43 Mont. 178, 115 Pac. 917, 919, as follows: "However, when a declaration of this character is offered, the party making the offer must show (a) that it was made while the declarant was holding the title to the property in controversy; (b) that the declarant was in fact the grantor of the party against whom the declaration is offered; and (c) that the declaration was against interest." (See, also, *Kurth* v. *Le Jeune,* 83 Mont. 100, 269 Pac. 408.) The declarations made by these predecessors at the time they were made were not against the then interest of the declarant. They were declarations made in the furtherance of the declarant's interest as it then existed. Accordingly, we must hold that the court not properly consider these statements as substantive evidence.

It is contended by counsel for defendant that in any event ▮▮▮▮▮▮ the evidence is insufficient to justify the court's finding of an appropriation in the amount that was found, at least that the evidence preponderates against its finding in that regard. Osnes, an officer of the plaintiff corporation,

testified that the Julia E. McDonald ditch was taken out of Cottonwood. Creek in July, 1883, at which time he was then employed on the ranch, and in 1884 he worked on the ditch, with others, and the ground was that year covered with water under the ditch; that from 1884 until he left in 1888 the water was used annually in the irrigating seasons. During this period of time the water was used regularly and continually, and the ditch carried about as much water in those days as it carries now. He testified that substantially the same land was irrigated under the ditch during that period of time as was at present. Most of the testimony tending to dispute the right, which was offered on behalf of the defendant, related to the method and amount of irrigation at a later time. However, defendant's evidence only tended to create a conflict in the testimony, and, after a careful review of it, we are unable to say that it clearly preponderates in favor of the defendant.

It is earnestly argued on behalf of defendant that he acquired a priority right against the plaintiff by adverse user or prescription. Warren testified that from the time he began the diversion of water he used as much water as he desired, without regard to the rights of plaintiff. Many witnesses testified as to his use of water. From 1907, which was the year when plaintiff corporation acquired the ranch, until 1931, Osnes testified that at any time he became short of water, upon a request made by him the defendant would either turn the water down or direct him to do so himself. He also testified that this had happened during a number of different years. Warren denied the making of any such requests and also that he ever acceded to any of them. He did testify that Osnes had complained frequently about his use of the water, and particularly of his diverting it over into the basin of Gerard Creek, which is a tributary of Cottonwood Creek the point of confluence of which there was below the various points of diversion of the plaintiff.

The use of the water testified to by Warren and numerous other witnesses, standing alone, was insufficient to prove title

by adverse possession. In addition to the fact of the use of the water, it must appear that the prior appropriator actually needed the water, and that the use actually operated to deprive the appropriator at such times. In the *St. Onge-Blakely Case,* supra, this court said: "While in each instance the right is established by proof of hostile possession of another's property, with proof of other attendant circumstances, the hostile possession of lands may be shown by proof of 'such acts of ownership and occupancy as are sufficient to "hoist his flag" over the lands, so that all may observe it' (*Collins v. Thode,* 54 Mont. 405, 170 Pac. 940), and such exclusive possession of necessity ousts the true owner from the land; two parties may at the same time be in possession of water from a creek and neither hold adverse to the other; each may justly claim the right to use the water he is using, without affecting the rights of the other, and therefore, in order to constitute adverse possession of water, the burden is upon the claimant to show that his use of the water deprived the prior appropriators of water at times when such prior appropriators actually needed the water; the use does not become adverse until it interferes with the use thereof by the prior appropriators, and therefore proof merely that the claimant used water and claimed the right to use it is no proof whatever of adverse use. * * * In further proof of his claim of adverse possession, defendant Blakely called a surveyor to show the volume of water in the creek at certain times during the months of August, September, and October of the year 1924, and then showed that at such times his use of the water did not leave sufficient water to fill the appropriations of the other parties to the action, but made no attempt to show when such parties had need of water when he was using it, and under the theory of his counsel, such proof was not necessary, but his counsel state that the testimony of St. Onge himself shows that at certain times since 1898 Bretherton had deprived him of water when he needed it. That testimony, however, is to the effect that at such times

St. Onge either demanded the water from Bretherton, who complied with the demand, or St. Onge himself cut Bretherton's dam and turned the water down to his headgate.''

The trial court made an express finding to the effect that the defendant acquired no title by adverse possession or prescription. The court must, in the light of its finding, have believed the testimony of Osnes as to his requests for water and that such demands were complied with by the defendant.

It appears from the record that on May 18, 1915, counsel for Mr. Osnes wrote the defendant a letter which complained of the fact that Osnes was not securing sufficient water, and that defendant Warren was diverting water into the Gerard Creek watershed which wasted down that creek. Osnes testified that after the letter was written he secured sufficient water. If the trial court believed the testimony of Osnes, as it must have in view of its express finding on the subject of adverse possession, then, under our decision in *St. Onge* v. *Blakely,* from which we have quoted supra the pertinent declarations, without question defendant failed to establish title by adverse possession.

Passing now to the consideration of the Hudson right: The Hudson brothers filed homestead entries in the year 1895 or 1896. It appears that they had cabins on their lands and that on June 4, 1896, they executed and had recorded a notice of appropriation of 320 inches of the waters of McDonald or Cottonwood Creek for the purpose of irrigating their homesteads which were then unsurveyed lands. The notice recites that the ditch was started on June 1, 1895, and finished on June 3, 1896. In the year 1897 the Hudsons left for Alaska, they being prospectors. A deed was received in evidence from the Hudsons dated June 21, 1901, conveying their water right to Joseph Vanden Heuvel. The deed recites that it was given for the purpose of correcting a certain deed between the same parties dated August 12, 1897, in which the water rights were indefinitely stated. By sub-

sequent conveyances the plaintiff became the owner of this right. It is the contention of defendant that there was no beneficial use of the water until about the year 1901, which was after the inception of Warren's rights.

The plaintiff has included in his brief cross-assignments of error, asserting that the court was in error in not awarding to plaintiff an amount of water in excess of the award made in the judgment as to this right. The statute, section 9751, Revised Codes, provides for cross-assignments of error. We considered this statute and its effect in a number of previous decisions of this court and have consistently held that this section has application only to cases in which the respondent makes cross-assignments of errors on rulings adverse to him and preserved in a bill of exceptions in order to enable this court to determine whether those complained of by the appellant were compensated or rendered harmless by reason of them. The section was not intended to do away with cross-appeals in cases wherein a party feels himself aggrieved by rulings on matters separate and distinct from those sought to be reviewed by the appellant. (*Best* v. *London Guarantee & Accident Co.*, 100 Mont. 332, 47 Pac. (2d) 656; *In re Silver's Estate*, 98 Mont. 141, 38 Pac. (2d) 277; *Stranahan* v. *Independent Natural Gas Co.*, 98 Mont. 597, 41 Pac. (2d) 39.) The alleged error of which plaintiff complains could in nowise compensate for the alleged error of which defendant complains, and instead of the one compensating the other, each accentuates or increases the other. Since there was no cross-appeal in this case, we shall decline to consider further plaintiff's cross-specifications of error.

Referring now to defendant's contention, which presents the necessity for a review of the evidence: It apparently is conceded that the Hudsons did construct a ditch and did divert water from Cottonwood Creek prior to their departure for Alaska. The witnesses on behalf of defendant testified that no beneficial irrigation was indulged in by the Hudson brothers as the result of their diversion, but that the water

was utilized to fill a depression, forming a lake or pond which was used as a swimming pool and perhaps to some extent for the propagation of fish. The witness Jensen, testifying on behalf of plaintiff, stated that the Hudson ditch was taken out in 1896, and irrigation proper was started then; that the lands were irrigated in a general way from the start to cover the acreage now under the ditch; and that later Vanden Heuvel constructed some additional laterals, but owing to the slope of the land few laterals were necessary. He further testified that some hay was cut as a result of the irrigation and estimated that a half section was perhaps covered with water. The witness Mansfield also testified that the Hudsons produced some hay, but they had a swimming pool at the lake and had a boat.

Again counsel for the defendant rely to some extent on the land office records as to statements made by various persons in connection with desert land entries, and what we have said with reference to the same question in our treatment of the McDonald right applies with like force and effect here.

It appears that the exact location of the Hudson homestead was not agreed upon by the various witnesses. If the witness Morrill, who testified as to its location, was to be believed, the Hudsons did not irrigate any substantial part of the homestead. It was, however, established on the trial of the case that Morrill had theretofore been convicted of a felony. This is a statutory method of impeachment. (Sec. 10668, Rev. Codes.) His testimony reveals that with great reluctance he testified to his full name, and only after he had testified to the contrary. True, he explained the nature of the offense of which he was convicted and testified to facts which might tend to excuse his dereliction. Nevertheless, the statute contains no exceptions, and this was sufficient for the court to disbelieve his testimony. Other testimony, however, was adduced disputing the location of the Hudson homestead as located by the engineer testifying for defendant,

302

and from an examination of the evidence in the record there was sufficient evidence, if belief of it was accorded as it was, to justify the court in its finding.

If we assume it to be the fact that the Hudson brothers did ▮▮▮ nothing more with the water diverted than to use it for the purpose of maintaining a swimming pool or fish pond, it is not clear that such a use would not be a beneficial use and hence the basis of a valid appropriation. (Kinney on Irrigation, sec. 697; *Cascade Town Co.* v. *Empire etc. Water Co.*, (C. C.) 181 Fed. 1011.) And if such be true, then any change in the manner and place of use could be made without injury to defendant, since his place of diversion was above all the points of diversion of the plaintiff. (*Peck* v. *Simon*, 101 Mont. 12, 52 Pac. (2d) 164.)

The testimony in support of the French right consisted substantially only of that of Jensen, who had signed and sworn to certain affidavits in connection with desert land entries filed some years after he had testified that irrigation began under the French diversion. These statements were identical with those referred to in our discussion relating to the McDonald right. It is argued that these contradictory statements utterly destroy Jensen's testimony. In the case of *Wise* v. *Stagg*, 94 Mont. 321, 22 Pac. (2d) 308, 311, we considered the effect of such contradictory statements and said: "After contradiction of a witness by showing his inconsistent statements at other times, not only is such contradictory evidence not substantive evidence concerning its subject-matter, but, as before, the credibility of the witness remains a question for the jury." The witness Jensen, when confronted with his prior statements, admitted that he signed the affidavits but explained that he did not consider land reclaimed merely by the diversion of water through a ditch and its application to the land for a few years. His explanation finds some support in the decisions of the Department of Interior of a somewhat similar construction there adopted. (*R. W. Mackinson*, 4 Land Dec. 165; *Taylor* v.

*Rogers,* 14 Land Dec. 194; *Nilson* v. *Anderson,* 23 Land Dec. 138.) Regardless, however of the construction of these affidavits, the question as to whether the prior statements of the witness destroyed his testimony was for the trial court, and it resolved it against the contentions of the defendant, and with this conclusion we will not interfere.

Counsel further contend that no claim to a water right could be sustained prior to the date when an attempt was made to secure title to a desert land entry, and cite the case of *Hough* v. *Porter,* 51 Or. 318, 95 Pac. 732, 102 Pac. 728, 98 Pac. 1083, where, at page 1104 of the latter publication, substantially that was said; but the court immediately following the statement, on the same page said there was strong evidence tending to support a finding that an appropriation was made prior to the date of the desert land entry. It then observed, however, that the clear preponderance of the testimony established the fact that no land was irrigated until at or after the time when the desert land entry was made. The Oregon court did not in that case reach its conclusion as to the date of priority of an appropriation upon the statement on which counsel relies alone, but considered that fact with others in determining the clear preponderance of the evidence. We think the evidence, if believed, as it was, by the trial court, was sufficient to sustain the right.

Defendant further contends that the plaintiffs acquired no interest in the French right, as such. It appears from the record that French, who initiated these rights and who made a desert land entry upon unsurveyed land by quitclaim deed, conveyed to Maggie Vanden Heuvel on August 23, 1897, purporting to convey the water right only. Counsel argue that by this conveyance the water right was severed from the land and that, since the right was never exercised by Maggie Vanden Heuvel upon lands in her possession, any conveyance by her would not operate to convey the right as an appurtenance to the predecessors in interest of the plaintiff. If such were altogether the fact, the result con-

304

tended for might obtain. However, on July 17, 1897, French and wife conveyed or assigned, by an instrument in the form of a quitclaim deed, the desert land entry made by him unto Maggie Vanden Heuvel. This conveyance mentioned among the things transferred all appurtenances. Furthermore, it was testified by some witnesses, although denied by many others, that prior to her conveyance to the predecessors in interest of plaintiff, water was diverted through the French ditch and used to irrigate her lands, which was done under arrangements satisfactory to her, upon the French desert land entry. When the first conveyance was made of the desert land entry, including the appurtenances, any water rights theretofore enjoyed by French were thereby transferred. (*Tucker* v. *Jones*, 8 Mont. 225, 19 Pac. 571.) The fact that a subsequent deed was executed could add nothing to the conveyance theretofore made, and accordingly we are unable to determine where any severance occurred between the land and the water right. As to whether the water was used upon the French claim, that was a disputed question of fact.

Counsel by argument seeks to demonstrate that by resort to various exhibits it can be determined that irrigation of the lands held by Maggie Vanden Heuvel was utterly impossible. The trial court heard the various witnesses testify and had the benefit of these same exhibits, and in addition it is disclosed by the record that the trial judge viewed the premises and could thereby interpret the testimony as he observed the physical facts, and occupying this superior advantage to our own he has found against the contentions of the defendant on conflicting evidence, and we therefore, in accordance with the oft-repeated rule, are unable to do other than approve his conclusions.

With reference to the damages allowed, counsel argue that in view of their previous contentions, damages were not properly allowed; if such contentions were sustained, counsel would be correct. Our conclusions, however, are otherwise.

The proof of damages was in some respects uncertain, but in view of the small amount awarded we think the proof was sufficient to justify at least that amount.

Lastly it is argued that the court was in error in taxing all of the costs against the defendant. Plaintiff by its pleadings asserted that all of its rights were superior to those of the defendant. The judgment only awarded priority as to three of the rights and adjudged the other rights of plaintiff to be inferior to those of the defendant. Also plaintiff claimed amounts with respect to many of its rights which were materially reduced in the judgment.

Counsel for plaintiff insist that under the provisions of section 9787, Revised Codes, plaintiff having prevailed, it is entitled to costs as a matter of right even though it did not secure the full amount of its demands; but likewise defendant has prevailed in part but he did not secure judgment for all of his demands. A water right suit, such as this, where all parties are seeking relief, is different from most, if not all, other kinds of action. In the case of *Wills* v. *Morris*, 100 Mont. 504, 50 Pac. (2d) 858, 860, we said: "Where all of the parties diverting water from a stream and its tributaries are made parties to the action, every party to the suit becomes an antagonist of every other party. (*McNinch* v. *Crawford*, 30 Mont. 297, 76 Pac. 698.) Hence it logically follows that if two or more of the parties are awarded a water right under the terms of the decree, each receiving such award recovers a judgment against the other or others. Such a judgment is divisible into parts." Accordingly, it is with difficulty that any proper award of costs may be made in this character of action, and in view of what we said in the *Wills Case*, supra, the statute (section 9787) is not strictly applicable to such a situation, and it could only be applied by making some apportionment of costs. Usually in decrees which come before this court for review in actions similar to this, no one is awarded costs. We do not hold that in every case ·similar to this costs

should not be awarded, but we think that no better apportionment of costs can be made in this case than to adopt the usual practice and hold that each party should pay his or its own costs in the lower court, and therefore the judgment should be modified by striking out all reference to costs.

The cause is remanded to the district court of Chouteau county, with directions to amend the judgment in accordance with the views herein expressed, and when so amended the judgment will stand affirmed, each party to pay its or his own costs on this appeal.

ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.

MR. CHIEF JUSTICE SANDS, absent on account of illness, did not hear the argument and takes no part in the above decision.